Nos. 22-2602 and 22-3083

# U.S. Court of Appeals for the Seventh Circuit

MARK A. PATTERSON,

*Plaintiff-Appellee,*

v.

HOWARD HOWE,

*Defendant-Appellant.*

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF INDIANA IN CASE NO. 1:16-CV-03364-KMB-SEB

## APPELLANT'S CONSOLIDATED BRIEF

CHRISTOPHER C. MURRAY
TODD J. KAISER
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
300 N. Meridian St., Ste. 2700
INDIANAPOLIS, INDIANA 46204
(317) 916-1300

*Attorneys for Appellant*

# <u>DISCLOSURE STATEMENT</u>

(1)  The full name of every party that the attorneys represent in the case (if the party is a Corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3);

<u>Howard Howe</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this Court:

<u>Ogletree, Deakins, Nash, Smoak & Stewart P.C.; Howard Howe</u>

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

<u>N/A</u>

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>N/A.</u>

<u>s/Christopher C. Murray</u>

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................1

TABLE OF CONTENTS .............................................................................2

TABLE OF AUTHORITIES .........................................................................6

JURISDICTIONAL STATEMENT ................................................................1

ISSUES PRESENTED ...............................................................................2

STATEMENT OF THE CASE .....................................................................3

I.  Factual Background ..........................................................................3

    A.  Patterson owed Indiana Tech for tuition. ................................3

    B.  Patterson intended to pay Indiana Tech but needed a
        payment plan he could afford...................................................5

    C.  Howe filed the Collections Case based on Patterson's unpaid
        tuition. ....................................................................................8

    D.  Patterson drafted his Answer to the Complaint in the
        Collections Case denying that he was loaned money but
        without disputing that he owed Indiana Tech for his tuition. . 8

    E.  Patterson did not undertake any actions to defend the
        Collections Case but agreed to go to mediation......................12

    F.  Patterson learned from Duff that the Requests to Admit were
        deemed admitted and believed there was nothing he could do
        to "undo" them. ......................................................................13

G.  Howe never attempted to use the Requests to Admit, and Patterson never attempted to withdraw his deemed admissions. ................................................................ 14

H.  Patterson, represented by Duff, sued Howe over the Requests to Admit. ...................................................... 15

I.  Through mediation, Patterson *pro se* obtain the most favorable monthly payment plan that had been offered to him and obtained access to his Indiana Tech transcripts. ............ 17

J.  Patterson did not incur any attorneys' fees or out-of-pocket expenses in litigating the Collections Case. ........................... 19

K.  Patterson was unable to identify any defenses to the Collections Case that he allegedly lost due to the deemed-admitted Requests to Admit. ................................................. 19

L.  Patterson was unable to say that he would have denied the Requests to Admit if he had responded to them. .................... 20

M.  Patterson claimed that he believed he lacked leverage in the mediation based on what Duff told him and not based on anything Howe did with the deemed-admissions. .................. 22

II. Procedural Background ...................................................... 24

A.  The Collections Case ................................................. 24

B.  Patterson's FDCPA complaint in this case and failure to allege any injury .................................................... 26

C.  The parties' stipulation for and briefing on summary judgment ............................................................ 27

D.  The district court's granting summary judgment in Patterson's favor .................................................... 30

E.  The district court's denying class certification, then granting class certification, and then decertifying the class action ...... 34

F.  Howe's motion to reconsider summary judgment and to dismiss for lack of subject matter jurisdiction ........................ 35

G.  The court's order on reconsideration and Patterson's deposition ................................................................. 36

H.  The court's order on standing ............................................... 37

SUMMARY OF THE ARGUMENT ................................................. 38

I.  There is no federal jurisdiction because Patterson did not allege or present evidence of an injury in fact. .......................................... 39

A.  Patterson's complaint failed to allege any injury and he never amended his complaint. .......................................... 46

B.  Patterson failed to establish subject matter jurisdiction at summary judgment. ............................................... 47

C.  The district court erred in allowing Patterson to submit a belated affidavit. ............................................... 51

D.  Even if his belated affidavit and deposition were properly considered, Patterson failed to establish standing under *Cassillas.* ................................................. 52

    1.  Patterson cited no authority that being served with truthful requests to admit can create a cognizable injury under the FDCPA. .................................. 53

a)   *McCollough* involved an attempt to deceive a debtor into admitting a false fact. ........................................................56

b)   *Pantoja* involved an attempt to deceive a debtor into surrendering a viable statute-of-limitations defense. .........57

2.   Patterson's belated affidavit and deposition testimony did not identify any particularized and concrete injury that was actual or imminent....................60

E.   The purported injury identified by Patterson and the district court occurred three months after Patterson filed his federal complaint and cannot establish standing. ...............................65

II.  Even if there exists federal jurisdiction, Howe's service of the Requests to Admit did not violated the FDCPA. ............................................................65

III. The district court should have reduced Patterson's attorneys fees................66

CONCLUSION....................................................................................66

CIRCUIT RULE 30(a) APPENDIX.....................................................68

CIRCUIT RULE 30(d) CERTIFICATION .........................................69

CERTIFICATE OF SERVICE ...........................................................70

CERTIFICATE OF COMPLIANCE...................................................71

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguirre v. Absolute Resolutions Corp.*,
  2017 WL 4280957 (N.D. Ill. Sept. 27, 2017)......................................40

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................74

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)..............................................................................48

*Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*,
  328 F.3d 309 (7th Cir. 2003)................................................................74

*Bartlett v. Heibl*,
  128 F.3d 497 (7th Cir. 1997)................................................................57

*Boss v. Castro*,
  816 F.3d 910 (7th Cir. 2016).........................................................76, 77

*Brunett v. Convergent Outsourcing, Inc.*,
  No. 19-3256, 2020 WL 7350277 (7th Cir. Dec. 15, 2020)..................55

*Casillas v. Madison Ave. Assocs., Inc.*,
  926 F.3d 329 (7th Cir. 2019).....................................................*passim*

*Costello v. Zavodnik*,
  55 N.E.3d 348 (Ind. Ct. App. 2016) ....................................................79

*Diedrich v. Ocwen Loan Servicing, LLC*,
  839 F.3d 583 (7th Cir. 2016)................................................................48

*Frank v. Autovest, LLC*,
  961 F.3d 1185 (D.C. Cir. 2020) ...........................................................39

*Groshek v. Time Warner Cable, Inc.*,
  865 F.3d 884 (7th Cir. 2017)................................................................50

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.*,
No. 19-3514, 2020 WL 7350278 (7th Cir. Dec. 15, 2020) ...............i, 54

*Hagy v. Demers & Adams*,
882 F.3d 616 (6th Cir. 2018) ................................................................ 40

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*,
778 F.3d 593 (7th Cir. 2015) ............................................................... 60

*Johnson v. Gudmundsson*,
35 F.3d 1104 (7th Cir.1994) ................................................................ 61

*Johnson v. Hix Wrecker Serv., Inc.*,
651 F.3d 658 (7th Cir.2011) ................................................................ 61

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
No. 18-3582, 2020 WL 7332483 (7th Cir. Dec. 14, 2020) ............. 54, 56

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................... *passim*

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) ...................................................... *passim*

*Neeley v. Portfolio Recovery Assoc., LLC*,
268 F. Supp. 3d 978 (S.D. Ind. 2017) ................................................. 39

*Nettles v. Midland Funding LLC*,
No. 19-3327, 2020 WL 7488610 (7th Cir. Dec. 21, 2020) ................... 56

*Pantoja v. Portfolio Recovery Associates, LLC*,
852 F.3d 679 (7th Cir. 2017) ............................................ 70, 71, 72, 73

*Pierre v. Midland Credit Mgmt., Inc.*,
29 F.4th 934 (7th Cir. 2022) .............................................................. 65

*Pierre v. Midland Credit Mgmt., Inc.*,
2017 WL 1427070 (N.D. Ill. Apr. 21, 2017) ....................................... 40

*Rossi v. Kohn Law Firm S.C.*,
No. 19-cv-192-jdp, 2020 U.S. Dist. LEXIS 86637, at *3 (May 18, 2020) ...........77

*Smith v. C Services*
    No. 1:16-cv-01897-RLY-DLP, 2010 U.S. Dist. LEXIS
    227464, at *6 (S.D. Ind.  Dec. 2, 2019) ............................................... 77

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .............................................................. *passim*

*Spuhler v. State Collection Serv., Inc.*,
    No. 19-2630, 2020 WL 7351098 (7th Cir. Dec. 15, 2020) .................. 54

*Swanson Grp. Mfg. LLC v. Jewell*,
    790 F.3d 235 (D.C. Cir. 2015) .......................................................... 74

*Swike v. Med-1 Sols., LLC*,
    No. 117CV01503JMSMPB, 2017 WL 4099307 (S.D. Ind.
    Sept. 15, 2017) ................................................................................ 33

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................... 42, 43

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ..................................................... 53, 57

*Zablocki v. Merchants Credit Guide Co.*,
    968 F.3d 620 (7th Cir. 2020) ............................................................ 68

**STATUTES**

Fair Credit Reporting Act ..................................................................... 39

Fair Debt Collection Practices Act (FDCPA) ................................. *passim*

15 U.S.C.

    § 1692k(a)(2)(A) ............................................................................. 32

    § 1692e ..................................................................... 30, 36, 43, 56

    § 1692f ................................................................. 30, 36, 43, 56, 68

28 U.S.C. § 1331 .................................................................................. 1

29 U.S.C. § 1291 .................................................................................. 1

## OTHER AUTHORITIES

United States Constitution Article III .............................................. *passim*

13B Fed. Prac. & Proc. Juris. § 3531.15 (3d ed.) .................................... 63

Fed. R. App. P. 26.1 .................................................................... 1

Federal Rule of Civil Procedure

    Fed. R. Civ. P. 8(a)(1) .......................................................... 58

    Fed. R. Civ. P. 12(h)(3) ......................................................... 45

    Fed. R. Civ. P. 56(c)(1)(A) ..................................................... 60

Indiana Rule of Procedure Rule 36 ............................................. 29, 33

Indiana Trial Rule 4(C) ............................................................. 36

Trial Rule 36(A) ...................................................................... 78

Ind. Tr. R. 36(b) ...................................................................... 79

Local Rule 56-1 ................................................................ 41, 45, 60

Local Rule 56-1(a) ............................................................ 60, 61, 62

Local Rule 56-1(d) .................................................................... 64

Rule 23(f) .............................................................................. 42

Rule 56 ...................................................................... 35, 60, 62

## JURISDICTIONAL STATEMENT

Plaintiff-Appellee Mark A. Patterson ("Patterson") invoked the district court's jurisdiction under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and 28 U.S.C. § 1331. Defendant-Appellant Howard Howe ("Howe") objects that there is no federal jurisdiction under Article III of the United States Constitution because Patterson lacks standing. Howe contends Patterson did not suffer an injury-in-fact that is traceable to Howe's conduct and redressable by a favorable judicial decision and, therefore, there is no case or controversy. *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019).

This Court has jurisdiction under 29 U.S.C. § 1291 because these consolidated appeals are from the district court's final judgment and its final judgment on an award of attorney's fees and costs.

The district court entered its final judgment adjudicating all of the claims with respect to all parties (except for the collateral issue of Patterson's request for an award of attorneys' fees) on August 11, 2022, and Howe filed his Notice of Appeal in No. 22-2602 on Monday, September 12, 2022. On October 21, 2022, the district court issued its

Order on Motion for Attorney Fees and Costs and entered its judgment on that order. Howe filed his Notice of Appeal in No. 22-3083 from that order on November 18, 2022.

## ISSUES PRESENTED

1.     Whether the service of requests to admit under Indiana Trial Rule 36 with a summons and complaint without advising the receiving party of the consequence of his or her failure to make a timely response to the requests to admit constitutes a false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e, and an unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f, irrespective of whether the requests to admit seek the admission of true or false facts.

2.     Whether a pro se defendant in a collections action who has failed to respond to requests to admit that ask him or her to admit the material allegations contained in the plaintiff's collections complaint are true has suffered an "injury in fact" for purposes of standing under Article III of the U.S. Constitution, irrespective of whether the requests to admit seek the admission of true or false facts.

3.     Whether the attorney's fees awarded to plaintiff were excessive.

## STATEMENT OF THE CASE

### I.     Factual Background

#### A.     Patterson owed Indiana Tech for tuition.

Patterson began attending Indiana Institute of Technology ("Indiana Tech") in 2012, where he started work towards a Bachelor of Science degree in Communications. (Transcript of Deposition of Mark A. Patterson, June 21, 2022 ("Dep.") 18:22-25, 19:1-9 [Doc. 136-1]) (SA114-115).) [1]

In 2012, Patterson signed a Payment Options Form in which he agreed with Indiana Tech that he was "fully responsible for full payment of all tuition" and that he would "not be permitted to register while [he had] a past due balance." (Dep. Ex. 4 [Doc. 136-5] at PDF page 3 (SA295).) The Payment Options Form further provided:

> I understand that my account is my responsibility, regardless of whether or not I receive . . . other financial assistance, and I agree to follow Indiana Tech's payment policies. . . . Due to lack of payment, the university may give my account to an outside agency to seek restitution. Furthermore, in the event

---

[1] Material in the required appendix bound with this brief is cited as A__. Material in the Separate Appendix is cited as SA__.

3

the university has to incur any expenses collecting this account, I agree to pay all the costs of collection. This includes, but is not limited to, collection agency fees, court costs, and/or any reasonable attorneys' fees.

(Dep. Ex. 4 [Doc. 136-5] at PDF page 3 (SA295).)

Patterson began taking classes at Indiana Tech while his financial aid package was being processed. Patterson was informed he could receive grants and loans but was required to submit certain financial information from his parents for verification. (Dep. 27:21-28:5 (SA123-124).) According to Patterson, "[f]or reasons that were just out of my control, their accountant took forever to give the documents to me." (Dep. 28:6-8 (SA124).)

On April 23, 2012, Patterson was sent an email from Indiana Tech's financial aid office stating:

You are receiving this letter because you have missing or incomplete documents that are required to complete your financial aid file. We have attempted to contact you numerous times, with no response. **As such, this is your final notice. Missing or incomplete documents must be turned into the Financial Aid Office by Friday, April 27 at 5:00 pm or your financial aid will be cancelled**.

(Dep. Ex. 1 [Doc. 136-2] (emphasis added) (SA287).)

On June 15, 2012, Patterson forwarded missing financial documents to Indiana Tech's financial aid office. (Dep. Ex. 7 [Doc. 136-8]

4

at PDF page 3 (SA305).) Patterson wrote, "I apologize for the extremely extended delay" and "[p]lease let me know if you need anything further from me at this point to reinstate my financial aid." (*Id.*)

Patterson was informed by Indiana Tech the financial aid for his first semester was no longer available because he had turned in the financial documents too late. (Dep. 28:8-11; 31:7-9 (SA124, 127).) Indiana Tech's financial aid office wrote to Patterson on June 18, 2021, explaining, "unfortunately your loans have been cancelled because we were unable to get the necessary ppwk in time to request the funds from the Department of Education." (Dep. Ex. 7 [Doc. 136-8] at PDF page 5 (SA307).)

Patterson thus had an outstanding balance for his first semester's tuition. (Dep. 28:14-15 (SA124).)

**B.** **Patterson intended to pay Indiana Tech but needed a payment plan he could afford.**

Patterson received student aid for his second semester at Indiana Tech. (Dep. 23:6-7 (SA119).) His financial aid application was accepted, and he received grants and loans. (Dep. 30:8-21 (SA126).)

After Patterson did not receive financial aid for his first semester, Patterson had discussions with a collections agency retained by Indiana

Tech to attempt to resolve the outstanding balance for his first semester's tuition. (Dep. 35:10-23 (SA131).) Patterson hoped to work out a payment plan with Indiana Tech but was only offered a plan that would have required him to pay $400 or more per month, which he could not afford. (Dep. 28:16-21 (SA124).)

Patterson completed all of the class that he registered for at Indiana Tech. (Dep. 23:4-5; 31:22-25 (SA119, 127).) Because Patterson had a balance for his unpaid tuition from his first semester and could not afford the payment plan offered to him by Indiana Tech, he did not continue classes at Indiana Tech after his second semester. (Dep. 23: 4-9; 28:16-29:1 (SA119, 124-125).) After Patterson ceased taking classes at Indiana Tech in 2013, the school refused, due to the outstanding balance for his first semester tuition, to release his transcript to him so that he could transfer to continue his education at another university. (Dep. 32:3-11 (SA128).)

Patterson believed his tuition for the first semester was around $7,000.00. (Dep. 23:16-20 (SA119).) Between 2012 and 2014, Patterson had multiple communications with Indiana Tech's business office and with a collections agency, Williams & Fudge, regarding his payment of

his first semester's tuition. (Dep. 41:3 – 43:8 (SA137-139) & Ex. 3 [Doc. 136-4] (SA291).) Patterson intended to pay off the amount he owed Indiana Tech if he could get an agreement for a monthly payment amount that he could afford. (Dep. 43:18-23 (SA139).)

Patterson testified that he believed his account with Indiana Tech was in collections by 2014. (Dep. 44:15-19 (SA140).) On October 25, 2014, Patterson emailed an Indiana Tech employee and a representative of Williams & Fudge stating the he was contacting them "to reach an amicable resolution of my outstanding bill with Indiana Tech." (Dep. Ex. 3 [Doc. 136-4] at 1 (SA291).) Patterson did not receive a response to his October 25, 2014, proposal. (Dep. 45:23-24 (SA141).)

By late 2014, the only payment plan options that had been offered to Patterson to resolve his debt to Indiana Tech required monthly payments he could not afford. (Dep. 44:24 – 45:6 (SA140-141).)

On May 9, 2016, Patterson again emailed an Indiana Tech employee "to resume discussion into me possibly settling my account." (Dep. Ex. 3 [Doc. 136-4] at 1 (SA291).) During his deposition, Patterson could not recall what prompted him to send his email on May 9, 2016, but he noted that during this time, he was "exhaust[ing] every possible idea

to just be able to continue finishing this degree and not having this balance hanging over my head." (Dep. 48:16-23 (SA144).) Patterson testified that at that time, "the ultimate goal was if I had to pay, hopefully I could pay within a reasonable amount of my budget to where I could just continue classes and finish my degree." (Dep. 75:9-12 (SA171).)

### C.    Howe filed the Collections Case based on Patterson's unpaid tuition.

On May 10, 2016, Howe filed an action on behalf of Indiana Tech against Patterson in Hamilton Circuit Court (the "Collections Case"). (Dep. 51:11-52:2 (SA147-148) & Ex. 4 [Doc. 136-5] (SA293).)  The debt that Howe sought to collect from Patterson in the Collections Case was solely for the unpaid tuition from Patterson's first semester at Indiana Tech. (Dep. 30:22-31:1 (SA126-127); 34:22 – 35:3 (SA130-131).)

### D.    Patterson drafted his Answer to the Complaint in the Collections Case denying that he was loaned money but without disputing that he owed Indiana Tech for his tuition.

Patterson testified that when he came home one day, notice of the Collections Case was attached to his door. (Dep. 57:8-20 (SA153).) In addition to a summons, Patterson received at that time three pages: a one-page complaint ("Collections Case Complaint"), a one-page with four

requests to admit (the "Requests to Admit" or "RTAs"), and a copy of the "Payment Options Form" that he had signed. (Dep. 58:2 – 59:2 (SA154-155).)

Patterson read the documents included within the package served on him. (Dep. 59:5-7 (SA155).) Patterson drafted an Answer (the "Answer") to the Collections Case Complaint by himself and faxed it to the court for filing by the deadline stated in the summons. (Dep. 60:12 – 61:15 (SA156-157).)

The first paragraph of the Collections Case Complaint alleged "[t]hat the Defendant borrowed money as evidenced by the Exhibits attached hereto." (Dep. Ex. 4 [Doc. 136-5] at PDF page 1, ¶ 1 (SA293).) In response, Patterson stated in his Answer: "Negligence of the Complaint herein, Defendant lacks knowledge on all allegations. Defendant did not borrow money from the university." (Dep. Ex. 7 [Doc. 136-8] at PDF page 1, ¶ 1 (SA303).) During his deposition, Patterson explained that in denying paragraph 1 of the Collections Case Complaint, "I think I was trying to communicate that I did not borrow money from the university" and that "I didn't enter into a loan agreement with Indiana Tech." (Dep. 62:7-16, 22-23 (SA158).) However, Patterson did not dispute that the Payment Options Form attached to the Collections Case Complaint was

"a valid agreement." (Dep. 68:15-17 (SA164).) Patterson also attached emails to his Answer showing that Indiana Tech had in fact informed him that his financial aid application had been cancelled because his paperwork was late. (Dep. Ex. 7 [Doc. 136-8] at PDF page 5 (SA307).)

The second paragraph of the Collections Case Complaint alleged "[t]hat the Defendant has failed to repay the money borrowed in conformity with the underlying exhibits." (Dep. Ex. 4 [Doc. 136-5] at PDF page 1, ¶ 2 (SA293).) In his Answer, Patterson responded: "Negligence of the Complaint herein, Defendant denies all allegations. On or about April 27 2012, Plaintiff notified Defendant to complete financial aid verification worksheet. Deadline for submission of said documents was not communicated to Defendant. Upon submission, Plaintiff notified defendant of returned aid." (Dep. Ex. 7 [Doc. 136-8] at PDF page 1, ¶ 2 (SA303).)

In explaining during his deposition what this denial meant, Patterson testified that he did not deny that he owed Indiana Tech money under the Payment Options Form attached to the Complaint:

> Q.  Did you deny that you had failed to repay any of the money that Indiana Tech alleged was owed under the Payment Options Form?

10

A.     No, I did not deny.

(Dep. 69:24 – 70:2 (SA165-166).)

The third paragraph of the Collections Case Complaint alleged "[t]hat Plaintiff is the owner or assignee of the indebtedness evidenced by the underlying exhibits." (Dep. Ex. 4 [Doc. 136-5] at PDF page 1, ¶ 3 (SA293).) In his Answer, Patterson responded: "Negligence of the Complaint herein, Defendant lacks knowledge on all allegations. Defendant has not been given proof that Plaintiff is the owner or assignee of the indebtedness evidenced by underlying exhibits." (Dep. Ex. 7 [Doc. 136-8] at PDF page 1, ¶ 4 (SA303).) In explaining what this denial meant, Patterson testified he had not previously heard of Howard Howe but had instead seen information about Williams & Fudge representing Indiana Tech. (Dep. 70:18 – 71:4 (SA166-167).)

The fourth paragraph of the Collections Case Complaint alleged "[t]hat Plaintiff is entitled to recover from the Defendant in default those monies allowed in conformity with the underlying exhibits, including but not limited to interest and the costs of collection." (Dep. Ex. 4 [Doc. 136-5] at PDF page 1, ¶ 4 (SA293).) In his Answer, Patterson responded: "Negligence of the Complaint herein, Defendant denies Plaintiff is

entitle[d] to recover monies from defendant." (Dep. Ex. 7 [Doc. 136-8] at PDF page 1, ¶ 4 (SA303).) In his deposition, Patterson explained that he denied this allegation because he believed that Indiana Tech had received financial aid funds for him from the Department of Education but then returned those funds to the Department of Education. (Dep. 72:7-13 (SA168).)

### E. Patterson did not undertake any actions to defend the Collections Case but agreed to go to mediation.

After filing his Answer, Patterson did not serve any discovery or attempt to defend the Collections Case. (Dep. 79:9-12 (SA175).) Patterson never retained an attorney to assist him in defending the Collections Case. (Dep. 80:3-6 (SA176).)

After Patterson's Answer was filed, the Hamilton Circuit Court conducted a pretrial conference by telephone on August 8, 2016. (Dep. 79:20-24; 80:3-12 (SA175-176).) The Hamilton Circuit Court encouraged the parties to go to mediation and suggested to Patterson that he might want the assistance of counsel in the event the case went to trial. (Dep. 80:14 – 81:3 (SA176-177).)

**F.   Patterson learned from Duff that the Requests to Admit were deemed admitted and believed there was nothing he could do to "undo" them.**

Following the Hamilton Circuit Court's suggestion, Patterson searched for attorneys online and came upon Robert Duff ("Duff" or "FDCPA Counsel"), whom Patterson emailed. (Dep. 83:17-21 (SA179).) Patterson spoke with Duff in or about December of 2016. (Dep. 101:20-23 (SA197).)

Patterson first learned from Duff in or around December of 2016 that Requests to Admit had been served on him with the Collections Case Complaint in May of 2016 and that they were deemed admitted because he had not responded to them. (Dep. 97:10 – 98:2 (SA193-194).) According to Patterson, "with having to eventually reach out to ask for counsel, I learned a lot more about this particular – these particular issues or the correspondence that I received from Mr. Howe. And it seemed like it was way beyond – the train had definitely left the station and there wasn't anything that could be done, but I definitely learned of that once I reach[ed] out to Mr. Duff." (*Id.*)

After talking with Duff, Patterson believed he could not "undo" the deemed-admitted Requests to Admit. Patterson testified that after speaking with Duff:

> [E]ssentially I was operating under the understanding that I didn't have the option to undo, especially once we had gone through the pretrial conference and everything was set. It's like I can't – this train has left the station, I can't undo it.

(Dep. 101:2-7 (SA197).)

### G. <u>Howe never attempted to use the Requests to Admit, and Patterson never attempted to withdraw his deemed admissions.</u>

Patterson admitted that Howe never filed anything with the Hamilton Circuit Court asking that the Requests to Admit be deemed admitted. (Dep. 98:23 – 99:10 (SA194-195).) Patterson also never filed anything with the Hamilton Circuit Court asking the court to withdraw his deemed admissions to the Request to Admit. (Dep. 99:11-15 (SA195).) Asked during his deposition if he ever considered moving the court to withdraw his deemed admissions to the Requests to Admit, Patterson testified: "I didn't know that that was an option, to be honest." (Dep. 99:16-18 (SA195).) Patterson also never asked Howe if he would agree not to treat the Requests to Admit as deemed admitted. (Dep. 130:4-18 (SA226).)

**H.**   **Patterson, represented by Duff, sued Howe over the Requests to Admit.**

By December 14, 2016, Patterson had retained Duff to represent him in this FDCPA lawsuit (the "FDCPA Class Action") against Howe. (Dep. 119:18-20 (SA215).) On December 14, 2016, Patterson, represented by Duff, filed his complaint initiating this FDCPA Class Action against Howe.  (Dep. 118:22 – 119:10 (SA214-215).)

It was sometime between August 8, 2016, the date of the scheduling conference in Hamilton Circuit Court, and December 14, 2016, the date when Patterson sued Howe in the FDCPA Class Action, that Patterson first learned from Duff that the Requests to Admit were deemed admitted. (Dep. 119:21 – 120:5 (SA215-216).) In his FDCPA Class Action complaint, Patterson alleged that "[t]he 'Requests to Admit document [that Howe served on him] [did] not advise the defendant that the requests are admitted unless the defendant serves a written answer or objection to the requests upon the plaintiff within thirty days." (Dep. 120:11 – 121:1 (SA216-217) & [Doc. 136-9] Ex. 8 (SA310).)

The FDCPA Class Action complaint that Patterson and Duff filed on December 14, 2016, did not allege that Patterson suffered any injury as a result of Howe's service of the Requests to Admit on Patterson. (Dep.

Ex. 8 [Doc. 136-9] (SA310).) In his FDCPA Class Action complaint, Patterson did not seek any actual damages based on Howe's service of the Requests to Admit on Patterson. (Dep. Ex. 8 [Doc. 136-9 ¶¶ 1-21] (SA310-312).) Instead, Patterson sought only an award of "statutory damages" along with "costs, attorney fees and all other appropriate relief." (*Id.* ¶ 14; *see also id.* at p. 3 ¶ D (SA311-312 ).)

When Patterson sued Howe in the FDCPA Class Action, Howe's Collections Case against Patterson was still pending in the Hamilton Circuit Court. (Dep. 122:1-6 (SA218).) Patterson thus had access to legal counsel during a significant portion of the time that the Collections Case was pending against him. Specifically, Patterson was represented by Duff from at least December 14, 2016, through the final judgment in the Collections Case in April 2017. (Dep. 123:14 – 124:17 (SA219-220).)

During his deposition, Patterson refused to answer the question whether Duff ever told him to consider withdrawing the deemed admissions to the Requests to Admit in the Collections Case, claiming attorney-client privilege. (Dep. 124:18 – 124:4 (SA220).) Asked if he would have moved to withdraw the deemed admissions to the Requests to Admit, if he had known that he could do so, Patterson testified that

the question called for "speculation" and "I don't know what I would have done other than what I did." (Dep. 139:18 – 140:1 (SA235-236).)

## I.    **Through mediation, Patterson *pro se* obtained the most favorable monthly payment plan that had been offered to him and obtained access to his Indiana Tech transcripts.**

Patterson testified that even after the August 8, 2016, scheduling conference with the Hamilton Circuit Court, he did not retain Duff to represent him in the Collections Case because Patterson believed he did not need an attorney at that time. In particular, Patterson testified that he did not need the assistance of counsel to select a mediator. (Dep. 83:18-22 (SA179).)  In addition, Patterson testified that he felt he did not need counsel for the mediation itself. He testified:

> There was an outstanding balance. It had gone to collections. Mr. Howe was collecting on it. And in terms of mediation, the only thing that would have been able to come out of that is would I be able to get access to my transcript somehow and most likely I was going to have to provide some type of payment to do so. And I was just hoping that I was going to be able to get it to an amount that I could afford.
>
> And it seemed like I wasn't going to need counsel specifically for this particular case because at the time we were going through mediation and it seemed like once we would go through mediation, we wouldn't have to go to court.

(Dep. 84:16 – 85:12 (SA180-181).)

Mediation in the Collections Case occurred on April 13, 2017. (Dep. 87:2-14 (SA183).) At the conclusion of the mediation, the parties entered into a settlement agreement under which Patterson agreed to entry of judgment against him for $7,500.00 plus $181.00 in court costs. (Dep. 132:4-5 (SA228) & Ex. 9 [Doc. 136-10] ¶ 1 (SA313).) The settlement agreement provided that Patterson would make monthly payments of $150.00 and that Indiana Tech would release Patterson's transcripts. (Dep. Ex. 9 [Doc. 136-10] ¶¶ 2-3 (SA313).)

Following the mediation, final judgment was entered against Patterson for $7,500.00. (Dep. 55:21-24 (SA151).) As part of his settlement with Howe, Patterson received his transcript from Indiana Tech, which allowed him to transfer to Indiana University and finish his undergraduate degree at Indiana University. (Dep. 15:5-7; 33:2-10 (SA111, 129).) The Indiana Tech transcript shows that Patterson received credit from Indiana Tech for all of the courses he took; those credits, including those for Patterson's first semester at Indiana Tech, transferred to Indiana University. (Dep. 33:16 – 34:1 (SA129-130).)

**J.**   **Patterson did not incur any attorneys' fees or out-of-pocket expenses in litigating the Collections Case.**

Patterson did not incur any attorneys' fees in the Collections Case. (Dep. 88:16-19 (SA184).) He also did not incur any out-of-pocket expenses in the Collections Case. (Dep. 88:24-25; 89:13-14; 91:4-7; 92:19 (SA184-185, 187-188).)

**K.**   **Patterson was unable to identify any defenses to the Collections Case that he allegedly lost due to the deemed-admitted Requests to Admit.**

On September 27, 2017, in the midst of summary judgment briefing in this case, Patterson filed an affidavit in which he averred that the Requests to Admit "essentially asked me to admit the case against me and admit that I had no defenses" and that "I did have defenses to the claim and it did not want to admit . . . all the allegations of the complaint." (Dep. 136:7 – 137:2 (SA232-233) & Ex. 10 [Doc. 136-11] ¶¶ 6 & 7 (SA315).)

In his subsequent deposition nearly four years later on June 21, 2021, Patterson was asked "what were the defenses to the claim that you referenced there in paragraph 7 [of your Affidavit] that you believe you had to the claim alleged against you in the collection action?" (Dep. 137:6-9 (SA233).) Patterson testified:

I might have to refer you back to Mr. Duff on that exactly. I would have to look, but I don't want to misspeak in terms of the actual language that needs to be – that's represented in this particular case.

(Dep. 137:10-14 (SA233).)

Patterson added, "because this [Affidavit filed in opposition to summary judgment] was filed on my behalf by my attorney, I would rather him speak to the legal ramifications of your question rather than me misspeaking." (Dep. 138:8-11 (SA234).) Patterson was thus unable to identify with any specificity any defenses to the Collections Case Complaint that, as of May and June 2016, he believed he possessed. He was thus also unable to identify any specific defenses to the Collections Case Complaint that were allegedly foreclosed by his failure to respond to the Requests to Admit. (Dep. 137:10-14, 137:17-24, 138:8-11 (SA233-234).)

**L.**  **Patterson was unable to say that he would have denied the Requests to Admit if he had responded to them.**

During his deposition, Patterson was shown a copy of the Requests to Admit. (Dep. 140:2-10 & (SA236) Ex. 11 [Doc. 136-12] (SA318).) The first of the four requests to admit asked Patterson to admit that "[n]o defendant in this cause is an infant or incompetent." Patterson was asked during his deposition, "If you had responded within 30 days, would you

have admitted that?" (Dep. 140: 11-14 & (SA236) Ex. 11 [Doc. 136-12] (SA318).) Patterson responded that "I would probably just go ahead and defer that back to my attorney." (Dep. 140:20-21 (SA236).)

Patterson was reminded that in May and June of 2016 when the Requests to Admit were served on him, he was not represented by Duff or other counsel. Therefore, the question was would he have admitted Request to Admit Number 1 based on the knowledge he had at that time. (Dep. 140:22 – 141:4 (SA236-237).) Patterson answered:

> I think it's really hard to speculate considering that if I could have had a different outcome or if I knew more at the time, I probably would have done differently, but I did not. So it's hard to speculate on what I would have done.

(Dep. 141:7-11 (SA237).)

Patterson was asked if his answer would be the same if he was asked whether he would have admitted or denied Requests to Admit numbers 2, 3, and 4 if he had responded to the Requests to Admit within 30 days after they were served. (Dep. 141:14-17 (SA237).) In response, Patterson testified:

> Based on my understanding of the question, essentially you're asking me to kind of assume that I knew or didn't know certain facts at the time and if I would have responded differently. And, again, I think it's hard for me to say what I would have written in this particular answer, number one, because just to, again, kind of restate how I even got to the

21

point of even writing the answer to begin with, I found myself on Google just trying to respond to something.

I really did not – I should have – if there's one thing that I would have done differently, I would have just tried to do my best to find some type of help or an attorney at the time, but I think that's the only thing that I probably would feel safe to say that I would have done.

But to say exactly how I would have answered or how I would have responded to either of those paragraphs, I think it's unclear.

(Dep. 141:20 – 142:12 (SA237-238).)

## M. Patterson claimed that he believed he lacked leverage in the mediation based on what Duff told him and not based on anything Howe did with the deemed-admissions.

Patterson also testified that he believed that he lacked leverage in the mediation in the Collections Case in April of 2017 due to the deemed-admitted Requests to Admit. (Dep. 100:5-8 (SA196).) Patterson claimed that "by the time I reached the point that we were at mediation there was no opportunity for me to be able to maneuver and try to undo what was done." (Dep. 100:13-17 (SA196).) Asked "how, if at all, did Mr. Howe ever use these deemed admissions to the requests to admit in the collection action," Patterson testified:

> [T]he only way I feel like I can describe it is while there might not have been a direct use, I would almost, like – just join in the theater of my mind here. Imagine if

> you're being robbed and someone has a weapon, but they
> don't use it. The presence of that weapon immediately
> disarms you and limits your options of response to
> particular action.
>
> And so while there may not have been a direct thing that
> I can point to to say, Well, because things were
> admitted, this was what happened, but I will say that
> because these were admitted, it's like my leverage was
> gone. Like I wasn't able to adequately defend myself and
> ultimately have to settle. I mean, it wasn't even like –
> the word "settlement," I would use that word loosely. I
> mean, it wasn't like there was any concessions that they
> made on their end, especially even financially.

(Dep. 105:12 – 106:9 (emphasis added) (SA201-202).)

Asked what leverage he believes he would have had to win

concessions at the mediation had the Requests to Admit not been deemed

admitted, Patterson testified:

> Well, if the request to admit wasn't there, technically
> that was the whole purpose of the initial correspondence
> that I received; right? So technically, we wouldn't have
> even had a case, right, if I understand correctly. You
> might have to help me there.

(Dep. 106:11-21 (SA202).) Asked to clarify if it was Patterson's belief that

if the Requests to Admit had not been served with the Complaint, there

would have been no Collections Case lawsuit, Patterson testified:

> It would be my understanding that if the request to
> admit wasn't included in this particular lawsuit, while
> there might have been some communication -- obviously
> this communication that's been ongoing since 2012 -- I

> would not have put myself in a position to where a
> looming court date in my future would make me feel like
> I would need to go ahead and settle, and settle for
> whatever I could settle for just to make sure that I could
> move on and get this situation taken care of.

(Dep. 106:24 – 107:13 (SA202-203).)

Patterson testified that the he did not know whether Howe's lawsuit could have been filed against him without attaching any Requests to Admit to the complaint. (Dep. 111:23 – 112:2 (SA207-208).) Patterson admitted that Howe never told Patterson that Patterson had no leverage because the Requests to Admit were deemed admitted. (Dep. 115:21-25 (SA211).) Rather, Patterson's belief that he had no leverage in mediation came through Patterson's discussions with Duff and from the mediator, who told Patterson at the outset of the mediation that he was not going to be happy at the end of the mediation because that "is just how mediation goes." (Dep. 116:1-16 (SA212).)

## II.    **Procedural Background**

### A.    **The Collections Case**

As noted above, Howe filed the Collections Case on May 10, 2016. When he served the complaint and summons, Howe also served on Patterson a set of Requests to Admit. (SA5-SA7.) The Requests to Admit informed Patterson they were propounded "pursuant to Rule 36 of the

Indiana Rules of Procedure" and requested Patterson's responses "no later than thirty (30) days following the date of service[.]" (SA6.) The Requests to Admit asked Patterson to admit:

1. No defendant in this cause is an infant or incompetent.

2. No defendant in this cause is on active service in any branch of the military forces of the United States of America.

3. The material allegations contained in the Plaintiff's complaint are true, and Plaintiff is entitled to the relief sought as a matter of law.

4. There exists no valid counterclaim or offset to the claim(s) of the Plaintiff.

*Id.*

On June 3, 2016, Patterson filed an Answer to the Complaint in the Underlying Lawsuit. (SA303.) Patterson did not answer the Requests to Admit. *See* Affidavit of Mark A. Patterson [Doc. 31-1] ¶ 10 (SA57).

As noted above, on April 13, 2017, Howe and Patterson mediated the Collections Case. (SA299.) On April 17, 2017, the parties entered into an Agreement of Settlement under which Patterson agreed to entry of final judgment against him for $7,500, plus costs. (SA313.) The case was dismissed on April 21, 2017, by agreed judgment. (SA300.)

**B.    Patterson's FDCPA complaint in this case and failure to allege any injury**

On December 14, 2016, Patterson, while the Collections Case was still pending, filed his Class Action Complaint against Howe in this case alleging violations of the FDCPA.  *See* Doc. 1 (SA1). Patterson alleged that Howe, in serving Requests to Admit without advising him they were admitted unless he served a written answer or objection within thirty days, used a false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e, and an unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f. *Id.* at ¶ 13 (SA2). Patterson purported to pursue his claims as a class action. *Id.* at ¶ 15 (SA2).

Patterson's Complaint did not make any allegation that he had suffered any injury as a result of Howe's conduct, nor did he allege or seek any actual damages. *Id.* at ¶¶ 1–21 (SA2-3).

On February 7, 2017, Howe filed his Answer, which asserted the federal courts lack jurisdiction because there is no "'case or controversy' as required by Article III of the Constitution."  Doc. 9 at ¶ 1 (SA8).

**C.** <u>**The parties' stipulation for and briefing on summary judgment**</u>

On June 22, 2017, the district court entered its Order Setting Briefing Schedule for Motions for Summary Judgment ("MSJ Briefing Schedule"). Doc. 20 (SA15). The Court noted the parties "stipulated at the initial pretrial conference that liability in this case would not depend on disputed facts or on facts that need to be the subject of discovery, thereby making cross-motions for summary judgment appropriate." *Id.* at 1 (SA15). *See also* Order on Cross-Motions for Summary Judgment ("MSJ Order") [Doc. 34] at 1 (noting the parties had agreed "that the material facts are not disputed and that the court [could] decide as a matter of law whether Mr. Howe violated the FDCPA") (A1).

On July 24, 2017, Howe filed his motion for summary judgment and supporting brief. Docs. 22 & 23 (SA17, 18). On August 23, 2017, Patterson filed his motion for summary judgment and supporting brief. Docs. 25 & 26 (SA30, 32). In his "Statement of Material Facts Not in Dispute" ("SOMF"), Patterson did not assert any facts or cite any evidence showing he had been injured by Howe's alleged conduct. Br. Supp. Pl.'s Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. ("Pl.'s SJ Br.") [Doc. 26] at 2 (SA33). Patterson further argued that "[n]o genuine issue of material fact

exists" and asserted that he was "not seeking actual damages" but rather requesting the entry of summary judgment in his favor and an award of $1000 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A). *Id.* at 12 (SA43).

On September 25, 2020, Howe filed his Response to Plaintiff's Motion for Summary Judgment ("Def.'s SJ Resp."). Doc. 29 (SA44). Among other arguments, Howe reasserted the objection from his Answer that the court did not have subject-matter jurisdiction based on the absence of a case or controversy, arguing "[t]here exists no 'injury-in-fact' of the kind required by the United States Supreme Court in *Spokeo* under Article III." *Id.* at 3 (SA46).

On September 27, 2020, Patterson filed his Reply Brief in Support of Summary Judgment ("Pl.'s SJ Reply"). Doc. 31 (SA51). In response to Howe's argument that Patterson lacked standing, Patterson acknowledged that he "did not come forward with evidence that Patterson himself was misled or deceived," but argued this was unnecessary because he was "not seeking an award of actual damages." *Id.* at 2 (SA52). Patterson also incorrectly asserted that Howe "raises a challenge to Patterson's standing for the first time." *Id* (SA51). (Patterson

overlooked Howe's objection in his Answer that there was no "case or controversy" in this case. *See* Doc. 9 ¶ 1 (SA8).

Patterson also contended in response to Howe's lack-of-standing argument that "being served with (improper) requests for admission without being advised that they would be deemed admitted if no response is made within thirty daysis analogous to receiving the prohibited calls and letters that the court in [*Swike v. Med-1 Sols., LLC*, No. 117CV01503JMSMPB, 2017 WL 4099307, at *4 (S.D. Ind. Sept. 15, 2017)] found to establish a concrete injury." Pl.'s SJ Reply at 2 [Doc 31] (SA52). In addition, Patterson submitted new evidence. As Exhibit A to his SJ Reply, Patterson attached the Affidavit of Mark A. Patterson ("Affidavit") [Doc. 31-1] (SA56). In his Affidavit, Patterson averred:

6. The Requests to Admit essentially asked me to admit the case against me and admit that I had no defenses.

7. I did have defenses to the claim and did not want to admit that all the allegations of the complaint.

8. The Requests to Admit did not tell me that if I failed to respond in thirty days that the requests would automatically be admitted and I did not know that.

9. If I had known that if I failed to respond in thirty days that the requests would automatically be admitted, I would have responded within thirty days.

> 10.  Since I did not know that if I failed to respond in thirty
>      days that the requests would automatically be admitted,
>      I did not respond to the Requests to Admit.

*Id.* ¶¶ 6-10 (SA56-57).

On October 10, 2017, Howe filed his Response to Plaintiff's Document 31-1 (SA56). *See* Doc. 33 (SA59). Howe objected that by failing to file his affidavit with his own motion for summary judgment on August 23, 2017, Patterson had violated Rule 56 and this Court's SJ Scheduling Order. *Id.* (SA60). Howe argued Patterson's untimely affidavit should be disregarded. *Id.*

### D.  **The district court's granting summary judgment in Patterson's favor**

On March 30, 2018, the district court entered summary judgment in favor of Patterson and against Howe on Patterson's FDCPA claim. MSJ Order [Doc. 34] (A1). With respect to the merits, the district court held that "Howe's use and service of requests for admission in the manner he followed when he sued Mr. Patterson in state court violated the FDCPA" as a matter of law. (A2.) Specifically, the court found that Howe's service of the Requests to Admit violated the FDCPA's proscription against the use of deceptive or misleading representations

or means (15 U.S.C. § 1692e) or of unfair or unconscionable means (15 U.S.C. § 1692f) in the collection of a debt.

The court concluded the Requests to Admit were "misleading and unfair" as a matter of law. (A13.) The court reasoned that the Requests to Admit were served simultaneously with the summons, which informed Patterson that he must respond to the complaint within so many days and included "a clear statement that in case of his failure to do so, judgment by default may be rendered against him for the relief demanded in the complaint." (A13 (quoting Indiana Trial Rule 4(C).) The court also observed the Request to Admit only "request[ed]" that Patterson respond within 30 days but did not advise him of the consequences of failing to do so. (*Id.*) Moreover, according to the court, the Requests to Admit asked Patterson to admit he had no legal defenses to the plaintiff's claims. (*Id.*)

The district court thus held:

And though this court would be inclined to hold that, in order to avoid a violation of the FDCPA, Requests to Admit should always advise of the consequences of a failure to make timely response, it does not need to do so here. Rather, it was the *combination* of communications that was inherently misleading and unfair. The summons unambiguously advised Mr. Patterson that he faced judgment against him if he failed to file a timely answer to the complaint. Mr. Patterson *did*

31

file an answer, and an unsophisticated debtor would conclude that that was what was necessary at that point to avoid judgment. But the discovery request Mr. Howe served with the complaint and summons ambiguously "requested" Mr. Patterson to do essentially the same thing again, but separately and only shortly after his response to the complaint was due, and in a completely different manner – not by filing with the court but by serving the plaintiff's counsel.

The request for admissions, under these circumstances, would confuse an unsophisticated debtor (and in this court's view, probably even a sophisticated one) about the required timing and manner of a response to the plaintiff's claims. The Seventh Circuit has held that communications that confuse in these ways violate the FDCPA.

*Id.* at 13–16.

The district court also relied heavily on *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011). (A16-A18.) The court explained that in that case, the court "found that service of requests for admission on a pro se defendant without explaining that the requests would be deemed admitted after thirty days was, as a matter of law" a violation of the FDCPA. (A16.)

Having found that Howe's use of the Requests to Admit was misleading and unfair as a matter of law under the FDCPA, the district court also rejected Howe's argument that under *Spokeo,* Patterson was required to establish standing by showing he had "suffered a subjective

32

pecuniary or other harm to maintain a claim for violation." MSJ Order [Doc. 34] at 18 (A18). The court found such "no-harm-no-foul argument[s]" to be "unavailing." *Id.* 10-11 & n.8, 18-21 (A10-11, 18-21).

The court's SJ Order contains a section titled "Undisputed Material Facts." Doc. 34 at 2-4 (A2-4). In that section, the court did not make any finding that Patterson had been injured by Howe's conduct. *Id.* To the contrary, the court found that "**[t]he parties have designated no facts about whether the Requests to Admit had any effect on the disposition of the lawsuit.**" *Id.* at 4. The court also noted later in its order that "**Mr. Patterson has not presented evidence in this case that shows the statements in the Requests to Admit were false**." *Id.* at 17 (A17).

The court also rejected Howe's arguments based on *Spokeo*. *Id.* at 18-20 (A18-20). The court distinguished *Spokeo* because it dealt with Article III's "injury-in-fact" requirement in the context of claims under the Fair Credit Reporting Act ("FCRA") rather than FDCPA. *Id.* at 18. The court also reasoned that the Seventh Circuit's "unsophisticated consumer" standard is an "objective test" and thus it is 'unimportant whether the individual that actually received a violative

[communication] was misled or deceved.'" *Id.* at 19 (quoting *Neeley v. Portfolio Recovery Assoc., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. 2017)).

After rejecting Howe's argument based on *Spokeo* that Patterson was required to demonstrate some "injury in fact," the district court observed offhand that "the standing issue may be academic in Mr. Patterson's case" because "[h]e has presented evidence, by affidavit, that he was misled by the requests to admit." (A20.) However, the court did not find as a matter of undisputed fact that Patterson had been misled by the requests for admission or injured by them. *Id.*

### E.   The district court's denying class certification, then granting class certification, and then decertifying the class action

On October 1, 2018, Patterson, after winning summary judgment, moved for class certification. *See* Doc. 52. On June 27, 2019, the district court denied Patterson's motion. Order Denying Motion for Class Certification [Doc. 67] (SA62). The court held class certification was inappropriate because any common issues would not predominate. *Id.* at p. 8–10 (SA69-71).

On July 12, 2019, Patterson sought reconsideration. *See* Doc. 71. On June 1, 2020, the district court granted Patterson's motion and

certified a class. Order on Motion to Reconsider Denial of Class Certification [Doc. 81] (SA72). The court now concluded a common legal issue predominated. *Id.* at p. 10 (SA81).

On June 15, 2020, Howe filed a Rule 23(f) Petition for Leave to Appeal Class Certification, which this Court denied on July 7, 20207th Cir. No. 20-8017, Docs. 1 & 6.

A year later, and based on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197 (2021), Howe moved to decertify the class on September 24, 2021. Doc. 120. Patterson did not oppose decertification (Doc. 124), and the district court granted Howe's motion on January 5, 2022 (Doc. 132) (SA132).

## F.   **Howe's motion to reconsider summary judgment and to dismiss for lack of subject matter jurisdiction**

On August 28, 2020, Howe filed a Motion to Reconsider Order on Cross-Motions for Summary Judgment [Doc. 34] (A1) and To Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, To Certify Interlocutory Appeal. Docs. 89 & 90. Howe argued this Court's decision in *Casillas*, issued after the court issued its MSJ Order, makes clear Patterson lacks standing to pursue his FDCPA claim. Doc. 90 at 1-2.

Howe argued Patterson's complaint failed to allege *any* injury in fact and that Patterson improperly attempted to remedy that defect in the midst of summary judgment briefing by submitting an affidavit claiming he had suffered injury. Howe noted that *Casillas* confirms that Howe's arguments in his summary judgment briefing relating to *Spokeo* – which the district court had rejected – were correct. Howe also contended that by submitting his affidavit in breach of the parties' pre-summary-judgment stipulation that there were no disputed material facts, Patterson had sandbagged Howe and prevented Howe from conducting discovery regarding the material issue of purported fact as to whether and how Patterson had allegedly been injured by Howe's conduct.

### G.   The court's order on reconsideration and Patterson's deposition

On March 23, 2021, the district court issued its Order on Motions for Reconsideration. (A23.) The district court reviewed *Casillas* and this Court's other recent FDCPA and standing cases. (A24 – A32.) The court rejected Howe's arguments. It concluded nothing prevented Patterson from essentially amending his complaint with his affidavit. (A34.) And, although this Court has emphasized that the elements of standing "are

not mere pleading requirements" but instead comprise "an indispensable part of the plaintiff's case," *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020), the district court concluded the parties' stipulation that there were no disputed facts for summary judgment did not "preclude [Patterson] from making assertions in support of standing that may be disputed." (A34.) However, the court did agree to allow Howe to conduct some limited discovery regarding Patterson's factual assertions of an injury in fact. (A37-A38.)

### H.   <u>The court's order on standing</u>

Following Patterson's deposition, the parties again briefed standing and, on July 25, 2022, the district court issued its decision finding that Patterson demonstrated an injury in fact for purposes of standing. (A49.) The court found that Patterson had established his standing because he testified "that he did dispute the debt to Indiana Tech, that he did not know that Requests to Admit, if not denied within 30 days, were deemed admitted, that had he known this, he would have made timely responses, and ***that he believed he lacked negotiating leverage as a result of the deemed admissions and agreed to pay the full amount claimed***." (A55.)

This district court focused in particular on Patterson's alleged belief during mediation that he lacked leverage to negotiate, which was information not included in Patterson's Affidavit. (A55-A56.)[2] The court found that Patterson's belief he lacked leverage was "concrete" and that "he testified without contradiction that he entered the mediation disadvantaged (whether Mr. Howe affirmatively wielded the admissions against him or not) by virtue of his knowledge that the allegations against him were legally deemed admitted." (A58.) The court also found that "there is no dispute that Mr. Howe's violation of the FDCPA put Mr. Patterson in this position and that this court can redress his injury." (A58). The court thus found Patterson has standing.

## SUMMARY OF THE ARGUMENT

Patterson and his counsel (as well as the district court) began this case believing it was unnecessary for Patterson to demonstrate any injury other than a statutory violation of the FDCPA. As this Court's case law on standing under the FDCPA began to make clear that *Spokeo* does

---

[2] The district court accused Howe of "cherry-pick[ing]" Patterson's statement that about "join[ing] in the theater of [his] mind" to perceive his alleged injury. (A57.) In fact, Howe had quoted the full portion of Patterson's testimony on this point in his brief, setting out the very same quotation included in the district court's order. *Compare* SA351 *with* A57.

apply to FDCPA claimants, Patterson attempted to change course. First he alleged in an affidavit in only vague and conclusory terms that he had suffered an injury, but his affidavit failed to demonstrate how he had been injured when he failed to show that the Requests to Admit that had been served on him sought admissions of "false" facts and when he could not show that Howe had ever attempted to use his deemed admissions for any purpose. Patterson then claimed for the first time during his deposition that the "deemed admissions" had injured him because he felt that he lacked any "leverage" during the mediation of in Howe's Collections Case. But that theory also fails because Patterson did not, and could not, show that he otherwise would have had any leverage in mediation and because he never showed that he actually *had* any viable defense to the Collections Case.

## ARGUMENT

## I.    <u>There is no federal jurisdiction because Patterson did not allege or present evidence of an injury in fact.</u>

The Supreme Court has held that "standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). The Court has explained:

The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

*Id.* (internal citations omitted). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Casillas*, 926 F.3d at 333 (citation omitted). "An alleged harm need not be tangible to be 'concrete,' but it must be 'real,' and not 'abstract.'" *Id.* (quoting *Spokeo*, 136 S.Ct. at 1548).)

Patterson bore the burden of establishing standing from the outset and continues to bear that burden throughout the case, subject to increasingly demanding evidentiary standards. The Supreme Court has explained:

The party invoking federal jurisdiction bears the burden of establishing these [three] elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *In response to a summary judgment motion, however, the*

> plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," which for purposes of the summary judgment motion will be taken to be true.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted) (emphasis added). *See, e.g.*, *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 588 (7th Cir. 2016). The Supreme Court has further stated:

> The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

On June 4, 2019, the Seventh Circuit considered in *Casillas* how *Spokeo* applies to FDCPA claims. 926 F.3d 329. This Court, rejecting the same reasoning applied by the district court in its SJ Order, held: "The bottom line of our opinion can be succinctly stated: no harm, no foul." *Id.*

In *Castillas*, the plaintiff alleged that she had received a debt collection letter that failed to inform her, as required by the FDCPA, that she had to communicate with the debtor collector in writing regarding the verification of her debt in order to trigger the FDCPA's statutory protections. *Id.* The Seventh Circuit found that under *Spokeo*, the

41

plaintiff failed to establish standing under Article III. The court explained:

> The only harm that Casillas claimed to have suffered, however, was the receipt of an incomplete letter—and that is insufficient to establish federal jurisdiction. As the Supreme Court emphasized in *Spokeo, Inc. v. Robins*, Casillas cannot claim "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions. Because Madison's violation of the statute did not harm Casillas, there is no injury for a federal court to redress.

*Id*. at 331–32. The Seventh Circuit held that although "Casillas caught the defendant in a mistake, . . .  it was not one that hurt her," and her case was dismissed for lack of subject matter jurisdiction.

This Court acknowledged that the FDCPA gives debtors a way to dispute or verify their supposed debts and "obligat[es] creditors to tell debtors how to do that." *Id*. Casillas alleged that the defendant violated the FDCPA because it failed to give her accurate notice instructing her that her communications to dispute or verify her alleged debt were to be in writing. The problem for Casillas was that she "did not allege that Madison's actions harmed or posed any real risk of harm to her interests under the Act." *Id*. at 334. The court continued:

She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting Madison or that she had any doubt about whether she owed Harvester Financial Credit Union the stated amount of money. She complained only that her notice was missing some information that she did not suggest that she would ever have used.

*Id.*

This found that "[a]ny risk of harm" to Casillas "was entirely counterfactual" in light of the fact "she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them." *Id.* The defendant's "mistake" did not "put Casillas in harm's way" and "was nothing more than a 'bare procedural violation.'" *Id.* (citation omitted).

In the wake of *Casillas*, this Court and district courts within this circuit have issued dozens of decisions dismissing FDCPA claims just like Patterson's. These include:

- *Larkin v. Fin. Sys. of Green Bay, Inc.*, No. 18-3582, 2020 WL 7332483, (7th Cir. Dec. 14, 2020) ("The plaintiffs seek to invoke the power of the federal courts to litigate an alleged FDCPA violation that did not injure them in any concrete way, tangible or intangible. As explained in *Spokeo* and *Casillas*, that's impermissible under

Article III. The suits should have been dismissed for lack of standing.");

- *Spuhler v. State Collection Serv., Inc.*, No. 19-2630, 2020 WL 7351098, at *1 (7th Cir. Dec. 15, 2020) ("This is yet another appeal that focuses on Article III standing to sue for an alleged violation of the Fair Debt Collection Practices Act ('FDCPA'). The appeal comes to us following a magistrate judge's grant of summary judgment to the plaintiffs on one of their assertions: that the defendant debt collector sent them collection letters that were misleading, in violation of the FDCPA, because the letters lacked a statement that interest was accruing on the debts. To demonstrate standing at the summary judgment stage of litigation, the plaintiffs must "'set forth' by affidavit or other evidence 'specific facts' " demonstrating that they have suffered a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely redressable by a judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because the plaintiffs here have not carried this burden, we vacate the judgment and remand for dismissal of their challenge.");

- *Brunett v. Convergent Outsourcing, Inc.*, No. 19-3256, 2020 WL 7350277, at *2 (7th Cir. Dec. 15, 2020) ("A debtor confused by a dunning letter may be injured if she acts, to her detriment, on that confusion—if, for example, the confusion leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate. But the state of confusion is not itself an injury;" "someone who is not injured cannot represent those who are;" and "[t]he judgment is vacated, and the case is remanded with instructions to dismiss for lack of subject-matter jurisdiction.");

- *Nettles v. Midland Funding LLC*, No. 19-3327, 2020 WL 7488610, at *3 (7th Cir. Dec. 21, 2020) ("Nettles alleges that Midland violated §§ 1692e and 1692f when it overstated the amount of her debt in its collection letter. But her complaint does not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her. . . . *Larkin* and *Casillas* are dispositive here. Because Nettles has not alleged that she suffered an injury from the claimed FDCPA violations, she has failed to

plead facts to support her standing to sue. We VACATE the order denying Midland's motion to compel arbitration and REMAND with instructions to dismiss the case for lack of jurisdiction.")

## A. Patterson's complaint failed to allege any injury and he never amended his complaint.

Patterson (or, more accurately, his attorney) clearly believed at the time he filed this lawsuit in December of 2016 that it was unnecessary for him to show an injury aside from a violation of the FDCPA. He sought only stipulated and not actual damages. Class Action Compl. [Doc. 1] ¶ 14 (SA1); *see also id.* at p. 3 ¶ D (SA3).[3]  And he did not allege any injury

---

[3] The Eleventh Circuit has suggested that Congress may have viewed actual damages as a *prerequisite* for statutory damages under the FDCPA, explaining that Congress may have "viewed statutory damages not as an independent font of standing for plaintiffs without traditional injuries, but as an 'additional' remedy for plaintiffs suffering 'actual damage' caused by a statutory violation." *Trichell*, 964 F.3d at 1000. A number of pre-*Spokeo* decisions by the Seventh Circuit held that a plaintiff may seek statutory damages under the FDCPA without seeking actual damages. *See, e.g.*, *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). But the language of *Bartlett* now appears irreconcilable with *Casillas*'s holding that a mere procedural violation of the FDCPA is insufficient to create standing. *See, e.g.*, *Bartlett*, 128 F.3d at 499 (noting the plaintiff was "seeking only statutory damages, a penalty that does not depend on proof that the recipient of the letter was misled" and stating "[a]ll that is required is proof that the statute was violated").

in his complaint and did not identify any injury in his SOMF in his summary judgment motion.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Lujan,* 504 U.S. at 561. Here, Patterson failed to satisfy even this lenient notice-pleading standard because he did not include in his complaint *any* allegation of a purported injury resulting from Howe's conduct. Doc. 1 ¶¶ 1-21 (SA1-3). Although Patterson bore the burden of establishing standing and jurisdiction[4], Patterson alleged *no facts* relating to any of the elements of standing.

**B.    Patterson failed to establish subject matter jurisdiction at summary judgment.**

Moreover, as the Supreme Court made clear in *Lujan*, Patterson continues to bear the burden of demonstrating subject matter jurisdiction throughout this litigation. Even ignoring Patterson's deficient pleadings, the district court should have subjected Patterson's burden of showing standing at the summary judgment stage to ordinary summary judgment

---

[4] Federal Rule of Civil Procedure 8(a)(1) requires that a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction . . . ." Fed. R. Civ. P. 8(a)(1).

standards. 504 U.S. at 561. Specifically, Patterson could not rest on "mere allegations" of injury (had Patterson made any such allegations); rather, Patterson had the burden of "'set[ing] forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.*

Patterson also failed to meet his burden of establishing subject-matter jurisdiction at the summary judgment stage. First, based on Patterson's Complaint – which failed to allege any purported injury – the parties "stipulated . . . that liability in this case would not depend on disputed facts or on facts that need to be the subject of discovery, thereby making cross-motions for summary judgment appropriate." SJ Briefing Schedule [Doc. 20] at 1 (SA15). *See also* SJ Order at 1 (A1) (noting the parties had agreed "that the material facts are not disputed and that the court [could] decide as a matter of law whether Mr. Howe violated the FDCPA"). Under the parties' stipulation and the court's SJ Briefing Schedule, Patterson should have been limited for summary judgment purposes to the record defined by his Complaint.

Second, Patterson, as the party bearing the burden of establishing jurisdiction, was required under Rule 56 and Local Rule 56-1 to set forth

*with his summary judgment motion* whatever facts he contended were
undisputed, including those purportedly establishing subject matter
jurisdiction. *See* Fed. R. Civ. P. 56(c)(1)(A); Local Rule 56-1(a). The
Seventh Circuit has explained that where

> the movant is seeking summary judgment on a claim *as to
> which it bears the burden of proof*, it must *lay out the elements
> of the claim*, cite the facts which it believes satisfies these
> elements, and demonstrate why the record is so one-sided as
> to rule out the prospect of a finding in favor of the non-movant
> on the claim.

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir.
2015) (emphasis added). The court further explained that "[i]f the movant
has failed to make this initial showing, the court is obligated to deny the
motion." *Id.*  Indeed, where a party bears the burden of proof on an
element of his or her claim and fails to establish that element in his or
her summary judgment motion, a court must rule against that party even
if the party opposing summary judgment fails to "rebut" that element in
its opposition. *See Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662
(7th Cir.2011) ("A party opposing summary judgment does not have to
rebut factual propositions on which the movant bears the burden of proof
and that the movant has not properly supported in the first instance.");
*Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir.1994) (even an

unanswered motion for summary judgment cannot be granted unless the movant has shown that the facts warrant judgment in its favor).

Here, in moving for summary judgment on his FDCPA claim, Patterson bore the burden of proof in establishing all of the elements of his claim, including those elements establishing subject matter jurisdiction. *Lujan*, 504 U.S. at 561. Howe had already objected to Patterson's standing from the very outset of this case when Howe filed his Answer. *See* Answer [Doc. 9] ¶ 1 (SA8) (denying "that the Court has jurisdiction, because there exists given the facts of the case no reasonable 'case or controversy' as required by Article III of the Constitution"). And Local Rule 56-1(a) required Patterson to include in his summary judgment brief "a section labeled 'Statement of Material Facts Not in Dispute' containing the facts: (1) that are potentially determinative of the motion; and (2) as to which the movant contends there is no genuine issue." Local Rule 56-1(a).

Contrary to the requirements of Rule 56 and Local Rule 56-1(a), Patterson's SOMF did not assert any facts or cite any evidence showing that he had been injured by Howe's alleged conduct. *See* Pl.'s SJ Br. [Doc. 26] at 2 (SA33). Patterson failed to "lay out" in his motion for summary

judgment any alleged facts establishing injury and thus subject matter jurisdiction. To the contrary, Patterson reiterated in his summary judgment brief that he was "not seeking actual damages." *Id.* at 12 (SA43).

### C. The district court erred in allowing Patterson to submit a belated affidavit.

As noted above, Patterson submitted a last-minute affidavit in the midst of summary judgment briefing claiming in conclusory terms that he had been injured by Howe's requests to admit. *See* Pl.'s SJ Reply [Doc. 26] at 3 (SA34).

Accepting Patterson's belated Affidavit was an abuse of discretion. The district court explained that Patterson submitted his affidavit both "in opposition to Mr. Howe's motion for summary judgment and reply in support of his own" and reasoned this was thus Patterson's "his first opportunity to respond to Mr. Howe's *Spokeo* argument." SJ Order [Doc. 34] at 20-21 (A20-21). However, because Patterson bore the burden of showing he has standing under Article III, it was incumbent upon him to set out the facts and evidence he believed supported each element of his claim, including any purported injury, *in support of his own motion for summary judgment. See, e.g.*, 13B Fed. Prac. & Proc. Juris. § 3531.15 (3d

ed.) ("[T]he plaintiff has the burden of proving standing."). He failed to do so.

Moreover, Paterson's opposition to Howe's motion for summary judgment was not, in fact, Paterson's first opportunity to respond to Howe's *Spokeo* argument challenging subject matter jurisdiction; Howe had already objected to Patterson's standing in his Answer. *See* Answer [Doc. 9] ¶ 1 (SA9).

### D. Even if his belated affidavit and deposition were properly considered, Patterson failed to establish standing under *Cassillas*.

Even if the district court had properly considered Patterson's improper affidavit, the "new evidence" that Patterson attempted to interject into the summary judgment record was insufficient to establish standing under *Casillas* and *Spokeo*.

In its SJ Order, the Court did not analyze Patterson's affidavit. SJ Order at 18-20. Instead, the Court focused its analysis on rejecting Howe's legal argument that "Mr. Patterson had to have suffered a subjective pecuniary or other harm to maintain a claim for violation." *Id.* at 18. The Court noted briefly at the conclusion of that discussion that, in any event, Patterson "has presented evidence, by affidavit, that he was

misled by the requests to admit." *Id.* at 20. But in light of the Court's rejection of Howe's legal arguments, the Court did not explain what Patterson's evidence of purported injury was or consider whether it satisfied *Spokeo*.

> **1.     Patterson cited no authority that being served with truthful requests to admit can create a cognizable injury under the FDCPA.**

Patterson did not suffer an injury in fact in the first instance because Howe did not violate the FDCPA.[5] Neither Howe nor the district court cited any authority that Howe's service of *truthful* requests to admit violated the FCDPA or could possibly cause a legal injury. The district court held that Howe violated the FDCPA's prohibition on the use of deceptive, misleading, unfair and unconscionable means in the collection of debt (1) by serving his Requests to Admit on Patterson at the same time as serving the complaint and summons, *id.* at 14-15; (2) by asking Patterson to admit certain "conclusory" requests that "broadly [sought]

---

[5] As noted above, the district court held, apparently as a question of first impression in this Circuit, that the service of requests to admit as used by Howe here violate the FDCPA. The district court's decision that Howe's conduct violated the FDCPA is necessarily intertwined with whether Patterson suffered a legally cognizable injury as a result of that conduct.

admissions that the 'collector wins,'" *id.* at 15-16; and (3) by not advising Patterson of the consequence of failure to respond to the Requests to Admit, *id.* at 16-18, i.e., that "each matter 'is admitted unless, within a period designated in the request, not less than thirty days after service . . . , the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney'" and that "[a] matter that is admitted "is conclusively established unless the court on motion permits withdrawal or amendment of the admission," *id.* at 5.

At the same time, the court "agree[d] that Mr. Patterson *has not presented evidence in this case that shows the statements in the Requests to Admit were false*." SJ Order at 17 (emphasis added). Thus, to succeed on his FDCPA claim and to establish standing, Patterson had to show that being served with *truthful* requests to admit in these circumstances injured him in some way.

In ruling against Howe, the court did not cite any precedent finding that the service of *truthful* requests to admit violated the FDCPA under any circumstances. That Patterson failed to allege or offer any evidence that Howe's Requests to Admit sought the admission of some *false* fact is

particularly relevant in light of *Casillas*'s requirement that Patterson show he was injured by Howe's conduct to have standing under the FDCPA. In light of the allegations and evidence in this case, Patterson had to show he was injured by the risk *he might admit the truth*. But Patterson cited no precedent that creating a risk that a debtor in a collections matter might admit the truth constitutes an "injury" or is deceptive, misleading, unfair, or unconscionable under the FDCPA.

Rather, in finding Howe's Requests to Admit were improper, the court relied on cases in which an attorney's litigation activity either provided *incorrect* information to a consumer or sought to trick a consumer into unknowingly surrendering a viable legal defense based on the statute of limitations. *Cf.  Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 947 (7th Cir. 2022) (Hamilton, J., dissenting) (arguing that FDCPA plaintiffs should be found to have standing when they receive "a dunning letter demanding money that is not owed," that an "attempt to collect [a] debt not owed cause[s] real and foreseeable mental distress familiar to law," and that an FDCPA plaintiff should have standing where she was the object of an effort "to pressure or trick her into paying the zombie debt"). Such cases are inapplicable here.

### a)   *McCollough* involved an attempt to deceive a debtor into admitting a false fact.

The district court relied heavily on *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011). *See* SJ Order at 16-18. In that case, the Ninth Circuit affirmed the district court's finding that the defendant's "service of *false* requests for admission violated the FDCPA as a matter of law." 637 F.3d at 952 (emphasis added). The court of appeals noted:

> JRL's requests for admission asked McCollough to admit facts that were not true: that he had never disputed the debt, that he had no defense, that every statement in JRL's complaint was true, and that he had actually made a payment on or about June 30, 2004. JRL had information in its possession that demonstrated the untruthfulness of the requested admissions.

*Id.* However, the record showed that some of these "facts" were untrue. Contrary to the requests for admission, *the record showed that the debtor had a viable statute-of-limitations defense* to the debt and that he had *not* made a payment on the debt on or about June 30, 2004. *Id.* at 945-46.

The Ninth Circuit found that by serving *false* requests for admission on a *pro se* debtor without informing him they would be deemed admitted if he failed to timely respond, the debt collector used

misleading and deceptive collection practices in violation of the FCDPA.

*Id.* The court explained:

> [W]e must conclude that the service of requests for admission *containing false information* upon a pro se defendant without an explanation that the requests would be deemed admitted after thirty days constitutes "unfair or unconscionable" or "false, deceptive, or misleading" means to collect a debt. Here, JRL effectively requested that McCollough admit JRL's entire case against him and concede all defenses. The least sophisticated debtor cannot be expected to anticipate that a response within thirty days was required to prevent the court from deeming the requests admitted.

*Id.* at 952 (emphasis added).

The district court erred by applying *McCollough* here where there is no argument or evidence that Howe served *false* requests to admit on Patterson.

### b) *Pantoja* involved an attempt to deceive a debtor into surrendering a viable statute-of-limitations defense.

In its SJ Order, the court also relied on *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 681 (7th Cir. 2017). SJ Order at 14. In *Pantoja*, the Seventh Circuit addressed "the practice of attempting to collect an old consumer debt that is clearly unenforceable under the applicable statute of limitations." In that case, a debt collector sent a dunning letter to a debtor on a debt that was twenty years old and "long

after the statute of limitations had run." *Id.* The court affirmed the district court's finding that the dunning letter was deceptive or misleading under the FDCPA for two reasons: "(a) it did not tell the consumer that the defendant could not sue on this time-barred debt and (b) it did not tell the consumer that if he made, or even just agreed to make, a partial payment on the debt, he could restart the clock on the long-expired statute of limitations, in effect bringing a long-dead debt back to life." *Id.* These omissions were significant because "a debt collector violates the Act by suing to collect a consumer debt after the statute of limitations has run and bars the suit." *Id.* at 683.

The *Pantoja* court was concerned that the dunning letter misled the consumer regarding his viable statute of limitations defense. By proposing certain "settlement offers" in the dunning letter, the debt collector effectively tried to deceive the consumer into giving up his statute of limitations defense. The court noted there is a "danger that a debtor who accepts the offered terms of settlement will, by doing so, waive his otherwise absolute defense under the statute of limitations." *Id.* at 684. But the dunning letter never informed the debtor of this consequence to agreeing to settle the time-barred claim. The court noted

that if the debtor accepted the collector's settlement offer, the debtor would unknowingly be "in a much worse legal position." *Id.* at 685. The court explained:

> Before he received defendant's letter, he had an absolute defense to any possible collection suit, which would have been illegal to file. If he had made or promised to make a partial payment, he could have been sued, likely as a pro se defendant, in a new suit. . . . . *Silence about that significant risk of losing the protection of the statute of limitations renders Portfolio Recovery's dunning letter misleading and deceptive as a matter of law.*

*Id.* (emphasis added).

Because the debt collector in *Pantoja* invited the debtor to take a step that would place him in a worse legal position – surrendering his viable statute-of-limitations defense – the court of appeals concluded the debt collector was required to give clear notice to the debtor of the consequences of this action because "[o]nly the rarest consumer-debtor will recognize this danger." *Id.* at 684. The court concluded "the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Id.* at 685-686. In such a case, a dunning letter must use language that is "clear, accessible, and unambiguous to the unsophisticated consumer" regarding the

59

implication of agreeing to settle a debt barred by the statute of limitations. *Id.* at 686.

The Seventh Circuit found the debt collector in *Pantoja* violated FDCPA requirements by using a dunning letter that was "an example of careful and deliberate ambiguity" and "obscure[d] from the debtor that the law prohibits the collector from suing to collect this debt or even from threatening to do so." *Id.* at 687. This was "the sort of misleading tactic the FDCPA prohibits." *Id.*

Like *McCollough*, *Pantoja* is distinguishable because Patterson never alleged or presented any evidence that Howe attempted to mislead him into surrendering a viable defense.

> **2.    Patterson's belated affidavit and deposition testimony did not identify any particularized and concrete injury that was actual or imminent.**

Even assuming solely for the sake of argument that the service of truthful requests to admit could pose a risk of injury and violate the FDCPA, Patterson also failed to offer any evidence purporting to show that he was injured by Howe's requests to admit. To establish standing at the summary judgment stage, "[s]tatements of fact must be sufficiently specific to rise above the level of 'conclusory allegations.'" *Swanson Grp.*

*Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561) (affirming dismissal for lack of standing).

Here, Patterson's affidavit contended only in conclusory terms that Patterson "ha[d] defenses" to the claim alleged against him but that the requests to admit "essentially asked [him] to admit the case against [him] and admit that [he] had no defenses." Doc. 31-1, ¶¶ 6-7. He further averred that he did not know the requests to admit would be deemed admitted "if [he] failed to respond in thirty days," that if he had received notice of that consequence he "would have responded within thirty days," and that he failed to respond within 30 days because he did not know that. *Id.* ¶¶ 8-10. In short, Patterson argued that he had "defenses" but lost them because the requests to admit were deemed admitted.

Patterson's affidavit failed to identify, let alone provide evidence of, *any alleged defense* to the complaint that Patterson claimed he possessed. And in his deposition, Patterson similarly was unable to identify any defenses to the allegations in the Collections Case that he claims he possessed but lost due to his deemed admission to the requests to admit. Although Patterson quibbled with the suggestion that Indiana Tech had loaned him money for his tuition, Patterson did not dispute the

61

material allegations in the Collections Case. In particular, Patterson's deposition made clear that Patterson admitted that the Payment Options Form was valid, that he had enrolled at Indiana Tech and taken courses, that his financial aid for one semester had been cancelled because he submitted his financial paperwork too late, and that he intended to pay Indiana Tech for his tuition. There is no allegation or evidence that the claims Howe pursued were barred by the statute of limitations, that the claims were for amounts that Patterson did not owe, or that Patterson was in any way deceived or harassed into paying debts he was not obligated to pay.

Patterson also admitted that Howe never used Patterson's admitted Requests to Admit for any purpose in the state-court litigation. Significantly, the only reason Patterson (allegedly) felt he did not have "leverage to negotiate" was because his own attorney, Duff, had told Patterson the Requests to Admit were deemed admitted.

Moreover, virtually no litigation activity occurred in the Collections Case. No discovery was conducted, and no motions were filed. Instead, Patterson and Howe agreed early on (specifically, on or around August 8, 2016, *before* Patterson knew about the deemed-admitted

Requests to Admit from Duff) that they would proceed to mediation. And that mediation provided Patterson a number of favorable outcomes: he received a payment plan that he could afford and he immediately obtained access to his Indiana Tech transcript.

During his deposition, Patterson also refused to speculate about what he might have done differently if he had known that the Requests to Admit must be answered in 30 days or if he had known that he could move to withdraw the deemed admissions.

Under these facts, Patterson's much-belated contention that he believed he lacked "leverage" during the mediation he conducted with Howe does not constitute an injury.

In *Rossi v. Kohn Law Firm S.C.*, for example, a plaintiff sued a law firm for violating the FDCPA by misrepresenting the attorney's involvement in the preparation of the lawsuit. No. 19-cv-192-jdp, 2020 U.S. Dist. LEXIS 86637, at *3 (May 18, 2020). The plaintiff claimed that had she known how little involvement the attorney had in reviewing her case, she would have disputed the debt or consulted with an attorney about potential defenses. *Id.* at *5. The plaintiff claimed that she had lost a chance to dispute the debt, but the court rejected this argument

because there was no evidence that her case would have turned out any differently. The court explained:

> Even if Rossi had adduced specific evidence that she would have disputed the debt and even if it would be reasonable to assume that a lawsuit filed on behalf of an attorney could not fail, Rossi still would not have standing to sue under the circumstances of this case. Rossi identifies no concrete harm that she suffered by not disputing the debt[.]

> If Rossi had a basis for disputing the debt, she would have a stronger argument. Evidence that the state-court lawsuit might have turned out differently would support a finding that Rossi had suffered an injury in fact.

*Id.* at *19–20. In other words, a plaintiff cannot merely allege confusion and claim he or she would have acted differently but for the communication; some real harm (or risk of real harm) is necessary to establish standing.

Patterson never identified any alleged defense that he claimed he lost, never offered evidence that he attempted to assert any such defense, and never offered evidence that Howe even attempted to use his deemed admissions to the Requests to Admit. Just as in *Casillas*, Howe's alleged "mistake" in failing to provide additional notice did not "put [Patterson] in harm's way" and "was nothing more [at most] than a 'bare procedural violation.'" *Id.* (citation omitted). Even considering his belated and

improper affidavit, Patterson lacked standing under *Spokeo* and *Casillas* and failed to establish subject matter jurisdiction.

### E. The purported injury identified by Patterson and the district court occurred three months after Patterson filed his federal complaint and cannot establish standing.

Standing is determined *at the time of the filing of the complaint.* An alleged injury suffered after the filing of the complaint cannot retroactively supply standing. *Carlone v. Lamont*, No. 21-871, 2021 WL 5049455, at *3 (2d Cir. Nov. 1, 2021). If Patterson's injury was his believe in April 2017 that he lacked leverage, that injury occurred *after* he filed his complaint in December of 2016.   Such injury could not provide standing retroactively.

## II. Even if there exists federal jurisdiction, Howe's service of the Requests to Admit did not violated the FDCPA.

Even if Patterson has established federal jurisdiction, this Court should reverse the district court's summary judgment decision and final judgment on the merits. Specifically, this Court should reverse the district court's holding that Howe violated the FDCPA by serving Requests for Admit under the circumstances of this case, where there is no evidence that those Requests to Admit sought to deceive Patterson into admitted *false* facts. *See supra.*

## III.  **The district court should have reduced Patterson's attorneys fees.**

If Patterson remains a prevailing party following this appeal, the Court should reduce his attorneys' fees award.  Patterson never pursued or established any actual damages. His recovery was nominal: stipulated damages of $1,000.00. When prevailing parties receive only nominal damages, a significant reduction in large fee expenditures may be appropriate.  *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."). Moreover, much of the litigation required in this case resulted from Patterson's own failure to allege an injury at the outset of this litigation, requiring substantial additional briefing and discovery that otherwise would have been unnecessary.

## **CONCLUSION**

Howe respectfully asks this Court to reverse the district court's judgments and to dismiss this case for lack of jurisdiction.

Respectfully submitted,

by: s/Christopher C. Murray
Christopher C. Murray
Todd J. Kaiser
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
300 N. Meridian St., Ste. 2700
Indianapolis, Indiana 46204
(317) 916-1300
christopher.murray@ogletreedeakins.com
todd.kaiser@ogletreedeakins.com

Attorneys for Appellant

# CIRCUIT RULE 30(a) APPENDIX

Order on Cross-Motions for Summary Judgment,
    Doc. 34 ......................................................................................... A

Order on Motions for Reconsideration,
    Doc. 106 ....................................................................................... A

Order on Defendant's Motion to Compel,
    Doc. 131 ....................................................................................... A

Order on Mr. Howe's Motion to Strike and on Mr. Patterson's Standing,
    Doc. 149 ....................................................................................... A

Final Judgment,
    Doc. 155 ....................................................................................... A

Order on Motion for Attorney Fees and Costs,
    Doc. 167 ....................................................................................... A

Judgment on Attorney Fees,
    Doc. 168 ....................................................................................... A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16-cv-03364-DML-SEB |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## Order on Cross-Motions for Summary Judgment

This case challenges as a violation of the Fair Debt Collection Practices Act a practice the defendant Mr. Howe (an attorney) uses in debt collection cases he files on behalf of creditor-clients in Indiana state court—or at least did in this case. [1] Mr. Howe serves with the summons and complaint a document titled "Requests to Admit," consisting of four statements to which his client seeks responses under Rule 36 of the Indiana Rules of Trial Procedure.  This document does not advise of the consequences of failure to serve timely denials. Plaintiff Mark A. Patterson seeks relief for himself and on behalf of a class.  Before the court are cross-motions for summary judgment on Mr. Patterson's individual claims.  The parties seek resolution on summary judgment of the liability issues presented before addressing

---

[1]      Evidence as to how often Mr. Howe has done so is not before the court because class discovery has not been done, and it's not germane to the issues raised by the summary judgment filings.  But the generic and conclusory nature of the requests for admission suggest it was not limited to the collection action against Mr. Patterson.

any class certification issues, and the court agrees that, under the circumstances here, it is appropriate to do so.

As explained below, the court determines plaintiff Mark A. Patterson is entitled to summary judgment on his claim that Mr. Howe's use and service of requests for admission in the manner he followed when he sued Mr. Patterson in state court violated the FDCPA.[2]  Other matters remain to be decided in this case, including the appropriateness of certifying a class, damages, and attorneys' fees. Plaintiff Mark Patterson's motion for summary judgment (Dkt. 25) is GRANTED. Defendant Howard Howe's motion for summary judgment (Dkt. 22) is DENIED.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Substantive law determines the facts that are material.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). Here, the parties agree that the material facts are not disputed and that the court can decide as a matter of law whether Mr. Howe violated the FDCPA.

## I.    Undisputed Material Facts

Based on the parties' submissions, the court considers the following undisputed facts.  Additional undisputed facts pertinent to the resolution of particular legal issues are discussed in the sections that follow.

---

[2]    The parties consented to referral to this magistrate judge, under 28 U.S.C. 636(b) and Federal Rule of Civil Procedure 73, for all proceedings including trial. *See* Dkt. 10-1.

On May 10, 2016, defendant Howard Howe filed a lawsuit on behalf of his

client, Indiana Institute of Technology, against Mark A. Patterson, seeking to

collect a debt Mr. Patterson allegedly owed to Indiana Institute of Technology

("IIT") for tuition or fees.  Attorney Howe was acting as a debt collector within the

meaning of the FDCPA, and Mr. Patterson's alleged debt was a consumer debt, the

collection of which is governed by the FDCPA.  Mr. Howe arranged for service by a

local sheriff's office on Mr. Patterson of a summons, the complaint, and a document

titled "Requests to Admit."  Mr. Patterson was served with these documents on May

12, 2016.  The Requests to Admit document reads in pertinent part as follows:

```
STATE OF INDIANA        )  IN THE HAMILTON CIRCUIT COURT
                        )  SS:
COUNTY OF HAMILTON      )  CAUSE NO.

INDIANA INSTITUTE OF                        )
TECHNOLOGY                                  )
                        Plaintiff,          )
vs.                                         )
                                            )
MARK A. PATTERSON                           )
                                            )
                        Defendant.          )

                      REQUESTS TO ADMIT

     Comes now Plaintiff, by counsel, and propounds the following Requests to Admit,
pursuant to Rule 36 of the Indiana Rules of Procedure, and further requests that the
answers and/or objections thereto be served upon Plaintiff by no later than thirty (30)
days following the date of service upon the Defendant(s):

     1.  No defendant in this cause is an infant or incompetent.

     2.  No defendant in this cause is on active service in any branch of the military
forces of the United States of America.

     3.  The material allegations contained in the Plaintiff's complaint are true, and
Plaintiff is entitled to the relief sought as a matter of law.

     4.  There exists no valid counterclaim or offset to the claim(s) of the Plaintiff.

                              Howard Howe, Counsel to Plaintiff

                      CERTIFICATE OF SERVICE

     I certify that the foregoing Requests to Admit were requested to be served with the
Summons and Complaint upon each named defendant.  Upon receipt of your e-mail address,
we will transmit a copy of the foregoing in ASC11 format.
```

None of the documents served on Mr. Patterson explained the consequence, set forth in Indiana Trial Rule 36(A), that requests not denied within 30 days would be deemed admitted.

Mr. Patterson did file an answer to the complaint against him,[3] but he did not serve an answer to the Requests to Admit.

In the debt collection lawsuit, a mediator was appointed by the court, and the parties settled the case. On April 17, 2017, they filed an Agreement of Settlement in which Mr. Patterson agreed to the entry of judgment against him for $7,500.00 plus costs of $181.00, to be paid in installments, in exchange for IIT's promise to release his transcript on request. *See* Dkt. 23 at p. 9. The parties have designated no facts about whether the Requests to Admit had any effect on the disposition of the lawsuit.

## II.   The Claims in this Lawsuit

Mr. Patterson filed his complaint on December 14, 2016. He alleges that Mr. Howe's service of the Requests to Admit violated the FDCPA's proscription against the use of deceptive or misleading representations or means (15 U.S.C. § 1692e) or of unfair or unconscionable means (15 U.S.C. § 1692f) in the collection of a debt. He relies in particular on the fact that Mr. Howe's communications did not inform him of the consequences under Indiana law of failing to respond to the Requests to Admit within the 30 days requested in these particular Requests to Admit. Under

---

[3]      *See* the Chronological Case Summary from the Hamilton Circuit Court, referenced at Dkt. 31, p. 3. The court takes judicial notice of the CCS.

Indiana Rule of Trial Procedure 36 (which is modeled on Fed. R. Civ. P. 36), a party

may serve a written request for the admission of any matters within the scope of

discovery and each matter "is admitted unless, within a period designated in the

request, not less than thirty days after service . . ., the party to whom the request is

directed serves upon the party requesting the admission a written answer or

objection addressed to the matter, signed by the party or by his attorney."  A matter

that is admitted "is conclusively established unless the court on motion permits

withdrawal or amendment of the admission."  *See* Dkt. 23 at p. 12.

## III.   Analysis

The purposes of the Fair Debt Collection Practices Act are "to eliminate

abusive debt collection practices by debt collectors, to insure that those debt

collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses."  15 U.S.C. § 1692(e) (quoted in *Pantoja v.*

*Portfolio Recovery Assoc., LLC*, 852 F.3d 679, 683 (7th Cir. 2017)).  To those ends, the

FDCPA prohibits the use of any "false, deceptive, or misleading representation or

means in connection with the collection of any debt" and the use of "unfair or

unconscionable means to collect . . . any debt."  15 U.S.C. §§ 1692e and 1692f.

Mr. Patterson maintains that he is entitled to judgment as a matter of law

that Mr. Howe's communications served on him violated these provisions of the

FDCPA.  In particular, he maintains (1) that the requests were at bottom requests

to admit "you win and I lose" and exceeded the scope of a proper request under

5

Indiana Trial Rule 36; and (2) that an unsophisticated debtor would not know the consequences of a failure to deny in a timely manner, a problem exacerbated by the fact that the requests were served with the summons and complaint.

Mr. Howe has advanced a number of arguments why judgment as a matter of law should be entered in his favor.  Some of those arguments overlap and some are barely developed, but they are summarized here.[4]  First, he argues that Indiana Trial Rule 36 authorized his service of the requests for admission with the complaint and summons, so his doing so couldn't have violated the FDCPA. Relatedly, he contends that he had no obligation under the FDCPA to give Mr. Patterson legal advice by explaining in his communications the consequences of a failure to serve timely responses to the request for admissions.  Second, he says that the preclusive effect of deemed admissions never applied here because he had not served the requests in an electronic format as provided by Indiana Trial Rule 26(A.1).  Third, Mr. Howe argues that Mr. Patterson has designated no evidence that an unsophisticated debtor would have found the communications misleading or deceptive.  Fourth, he argues that Mr. Patterson has no evidence of injury, rendering his claims insufficient under *Spokeo*.  Finally, he asserts that the claims are barred by the *Rooker-Feldman* doctrine.

---

[4]     In his first summary judgment submission, Mr. Howe argued that he is not a debt collector.  He later withdrew that argument.  *See* Dkt. 28.

6

In the course of its discussion below, the court will address to the extent necessary all the arguments of the parties, though not necessarily in the order they were made.

### A. Use of a discovery device authorized by the Indiana Trial Rules does not immunize Mr. Howe from liability under the FDCPA regardless of the surrounding circumstances.

Mr. Howe's principal argument, whether asserted under the label of due process (Dkt. 29 at p. 3), federalism (Dkt. 23 at p. 3), professional responsibility (*id*.), or an "attack on Rule 36" (Dkt. 29 at p.5), is that service of requests for admission with the summons and complaint is permitted by the law (in particular, Indiana Trial Rule 36) and thus could never violate the FDCPA.  Mr. Howe cites no authority for that argument.  And indeed, that argument cannot be squared with Supreme Court and Seventh Circuit precedent.  The core of his argument is that in litigating against Mr. Patterson, he used means expressly authorized by the Indiana Trial Rules, in this case, a discovery device authorized by a trial rule.  But the law is clear that the use of litigation tools—whether in issuing pleadings, filings, or discovery—can violate the FDCPA, even though those tools are specifically authorized by the trial rules.

The Seventh Circuit, along with many other courts, has made clear that the litigation activities of lawyers—which are grounded in state rules of procedure—can violate the FDCPA.  In *Marquez v. Weinstein, Pinson & Riley*, *P.S.*, 836 F.3d 808, 810-11 (7th Cir. 2016), the Seventh Circuit expressly held that the FDCPA covers the *process* of litigation and that pleadings or filings can fall within the FDCPA.  In

doing so, our court of appeals cited the Supreme Court's decision in *Heintz v. Jenkins*, 514 U.S. 291 (1995), as well as the decisions of numerous federal courts of appeal.  *See* 836 F.3d at 810.

Putting it another way, Mr. Howe contends that the Indiana Supreme Court has determined that the rules of procedure it has adopted are "just," and thus his adherence to them is, by definition, just.  *See* Dkt. 29-5.  That contention does not withstand basic scrutiny.  Rules of procedure authorize and govern the service and filing of all sorts of documents:  pleadings, motions, discovery requests, and the like.  But that does not mean that a lawyer's particular use of those procedures is always just or cannot give rise to some other liability.  One need look no further than Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 to see that both the Supreme Court and Congress recognize that procedural devices can be used in "frivolous," groundless," and "vexatious" ways.

Mr. Howe's argument has also been implicitly rejected in a number of decisions in which courts, including the Seventh Circuit, have found that certain debt collection practices, though consistent with state law or rules, have violated the FDCPA.  For example, in *Oliva v Blatt, Hasenmiller, Leibsker & Moore LLC*, 864 F.3d 492 (7th Cir. 2017), the Seventh Circuit, sitting *en banc*, held that a debt collector that had brought a collection suit against the debtor in a municipal district in which he didn't reside—having done so in reliance on controlling precedent— nevertheless could violate the FDCPA.  *Oliva's* predecessor decision, *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014), is also instructive on this point.  *In*

8

A8

*Suesz*, the court held that a collection suit filed in a township other than the township where the debtor resided violated the FDCPA, even though state law venue rules permitted it. *Id.* at 638. The Seventh Circuit has also held that a debt collector can violate the FDCPA by suing on a debt barred by the statute of limitations, though the applicable state law would permit a collector to do so, leaving to the debtor the affirmative defense. *See Phillips v Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2014). *See also Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679, 683 (7th Cir. 2017).[5]

Finally, the court notes that the FDCPA itself provides that the statute preempts state laws "to the extent that those laws are inconsistent with any provision of [the FDCPA]." 15 U.S.C. § 1692n. The court acknowledges that finding this provision entirely dispositive may implicate a beg-the-question flaw. But the point remains that Congress recognized in enacting the FDCPA that certain practices could be authorized by state law and yet violate the Act. Mr. Howe is simply wrong that a practice authorized by Indiana law or rule must be beyond the reach of the FDCPA.[6]

---

[5]   The United States Supreme Court held in *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407 (2017), that submission of a time-barred claim in bankruptcy does not violate the FDCPA. The court made clear, however, that its holding does not apply to the filing of a civil suit, as addressed in *Phillips* and *Pantoja*. *See id.* at 1413.

[6]   Mr. Patterson has also argued that Indiana Trial Rule 36 affords Mr. Howe no safe harbor because his requests for admission were not proper discovery requests under the rule. He contends that they were improperly directed toward ultimate legal conclusions rather than to evidentiary issues. Mr. Patterson has loaded more cargo on his cited authority than it will bear, but the court does not need to address his argument in this context and therefore does not. However, as

**B. The fact that Mr. Howe did not comply with an Indiana trial rule regarding service of the requests does not nullify a violation of the FDCPA.**

Mr. Howe has also advanced the curious argument that because he did not serve an electronic version of the requests for admission, as provided by Indiana Trial Rule 26(A.1), then the requests weren't actually "served," and thus couldn't have created a violation of the FDCPA. This no-harm-no-foul argument is unavailing, for a number of reasons. First, the FDCPA targets "means" and "communications" that are misleading or unfair; it is not limited to communications "served" under the applicable trial rules. Second, nothing in Indiana Trial Rule 26(A.1) provides that a discovery request is nullified or deemed invalid if it is not served in an electronic format.[7] Third, the operation of Rule 26(A.1) would have rendered Mr. Howe's service of the requests for admission under these circumstances even *more* misleading: Mr. Howe has confused this *court* about when Mr. Patterson's responses to the requests were due when not accompanied by electronic service; an unsophisticated consumer would be hopelessly confused. Fourth, Mr. Howe's argument springs from another faulty premise—that the misleading communication or unfair means must have actually caused Mr.

---

discussed in section III.D. below, the conclusory nature of the requests is one of the facts that contributes to the misleading and unfair nature of the communications Mr. Patterson received from Mr. Howe.

[7]     And if, as Mr. Howe says, the lack of service rendered his entire effort meaningless, one is left to wonder why he does it.

Patterson to lose his case.  Nothing in the FDCPA requires this sort of proof. [8]

Finally, the court notes the irony of Mr. Howe's argument that a communication or

means that complies with Indiana Trial Rule 36 cannot form the basis of an FDCPA

violation when he at the same time acknowledges he failed to comply with the trial

rules in effecting that communication or means.

### C. The *Rooker-Feldman* doctrine has no application here.

Mr. Howe argues that the *Rooker-Feldman* doctrine bars Mr. Patterson's

FDCPA claim.  The court does not follow this argument—at all—but can still easily

reject its application here.  The *Rooker-Feldman* doctrine divests lower federal

courts of "jurisdiction over cases brought by state-court losers challenging state-

court judgments rendered before the district court proceedings commenced." *Mains*

*v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 227 (Oct.

2, 2017); s*ee D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v.

Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923).  As Mr. Patterson points out, this

case was filed well before any judgment was entered in the underlying debt

collection case.[9]  Moreover, even if this case had been filed after the state court

judgment, it does not seek to set aside that judgment.  Nor is it "inextricably

intertwined" with a state court judgment.  If Mr. Patterson succeeds here against Mr.

Howe, it will not undo the money judgment Mr. Howe's *client* obtained against Mr.

---

[8]     This point will be addressed more fully in section III.E. below.

[9]     *See* the Chronological Case Summary from the Hamilton Circuit Court,
referenced at Dkt. 31, p. 3.  The court takes judicial notice of the CCS.

Patterson in the Hamilton Circuit Court. *See Mains*, 852 F.3d at 675 (quoting *Sykes v. Cook County Circuit Court Prob. Div.*, 837 F.3d 736, 743 (7th Cir. 2016)). [10]

### D. Mr. Howe's service of requests to admit under the undisputed circumstances presented here violated the FDCPA as a matter of law.

#### 1. Mr. Patterson was not required to present survey evidence to show that the challenged practice was misleading to the unsophisticated consumer.

Courts have frequently explained that alleged FDCPA § 1692e deceptive/misleading violations fall in one of three categories: The first category consists of cases where the allegedly offensive language is plainly and clearly not misleading; in such cases, the collector would be entitled to judgment as a matter of law. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citation omitted). The second category consists of cases where the language is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer; in such cases, the plaintiff "may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* (quoting *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009)). Finally, the third category consists of cases where the communications are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be

---

[10]     Mr. Howe's invocation of *Rooker-Feldman* is also contextually flawed. The doctrine undermines a federal court's subject matter jurisdiction under Rule 12(b)(1). Mr. Howe has not filed a motion under that rule.

successful. *Id.*  This last category, like the first, is amenable to determination as a matter of law.  *See, e.g., Marquez,* 836 F.3d at 814-15.

Mr. Howe contends that Mr. Patterson's FDCPA claim fails as a threshold matter because he has not designated survey or other evidence to show that the hypothetical unsophisticated debtor would have found Mr. Howe's service of requests to admit—under these circumstances and without advising of the consequences of failure to respond—misleading.  *See* Dkt.29, pp. 1-2.  But as the following discussion demonstrates, the practice at issue falls into the third category, so Mr. Patterson was not required to present any extrinsic evidence.

### 2. The requests for admission as served in this case were misleading and unfair.

As noted above, Mr. Patterson received three documents—served together— from Mr. Howe.  He received a complaint that alleged he owed IIT a certain sum, had failed to pay it, and that IIT was entitled to a judgment against him in that amount.  He received a summons that informed him, as provided by Indiana Trial Rule 4(C), that he had a specified period of days, as computed under Indiana Trial Rule 6, to respond to the complaint, along with "a clear statement that in case of his failure to do so, judgment by default may be rendered against him for the relief demanded in the complaint."  Indiana Trial Rule 4(C).  And he also received the Requests to Admit, in which the plaintiff, through its counsel, "request[ed]" that he respond within 30 days to statements tantamount to admissions that he owed the money, that he had no legal defenses to the plaintiff's claim, and that the plaintiff was entitled to recover against him.

13

Mr. Howe argues that he can't be required under the FDCPA to provide legal advice to his client's adversary by advising Mr. Patterson of the legal consequences of his failure to serve timely responses to the requests for admission. That broad assertion is inconsistent with a recent decision of the Seventh Circuit in which it implicitly rejected the notion that an FDCPA violation can't be grounded in a collector's failure to advise of legal consequences. In *Pantoja v. Portfolio Recovery Assoc.*, 852 F.3d 679 (7th Cir. 2017), the court addressed a communication to a debtor that invited the debtor to enter into a payment program on a time-barred debt but that didn't advise that such payments could reset the statute of limitations on the debt. It explained, "[W]e believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand." *Id*. at 685.

And though this court would be inclined to hold that, in order to avoid a violation of the FDCPA, requests for admission should always advise of the consequences of a failure to make timely response, it does not need to do so here. Rather, it was the *combination* of communications that was inherently misleading and unfair. The summons unambiguously advised Mr. Patterson that he faced a judgment against him if he failed to file a timely answer to the complaint. Mr. Patterson *did* file an answer, and an unsophisticated debtor would conclude that that was what was necessary at that point to avoid judgment. But the discovery request Mr. Howe served with the complaint and summons ambiguously

14

"requested" Mr. Patterson to do essentially the same thing again, but separately
and only shortly after his response to the complaint was due, and in a completely
different manner—not by filing with the court but by serving the plaintiff's counsel.

The request for admissions, under these circumstances, would confuse an
unsophisticated debtor (and in this court's view, probably even a sophisticated one)
about the required timing and manner of a response to the plaintiff's claims.  The
Seventh Circuit has held that communications that confuse in these ways violate
the FDCPA.  In *Marquez v. Weinstein, Pinson & Riley*, the court addressed an
allegation in a collector's complaint that the debt "will be assumed to be valid and
correct if not disputed . . . within thirty (30) days."  836 F.3d at 813.  But that was
not the date by which the answer to the complaint was due, and the court found it
misleading and deceptive as a matter of law.  *Id.* at 815.  The Seventh Circuit's
observation—apt here too—is that its function was only to mislead.  *Id.* at 814.

The confusion created by service of the requests for admission with the
complaint and summons is exacerbated by the content of the requests.  As discussed
in footnote 6 above, the court does not adopt Mr. Patterson's view that requests to
admit conclusory or legal assertions are not permitted by Indiana Trial Rule 36.
But the language of these particular requests is a factor the court considers in
concluding that their service here, unaccompanied by a statement of the
consequences of a failure to respond, contributed to the FDCPA violation.  For
example, they asked Mr. Patterson to admit that the "material" allegations of the
complaint are true, that the plaintiff is "entitled to judgment as a matter of law,"

that there is no valid counterclaim, and that there is no offset.  These are not terms that an unsophisticated consumer would know.  And again, their conclusory nature renders them confusing because they broadly seek admissions that "collector wins" at the same time the debtor is being directed to file (and in this case did file) a timely answer in order to deny that "collector wins."  Furthermore, the discovery requests merely "requested" Mr. Patterson to respond; the other documents he received clearly commanded a response.  An unsophisticated consumer is very unlikely to apprehend the dire consequences of not acceding to the collector's "request."

### 3. The Ninth Circuit has held that service of requests to admit without advising of the consequence of failure to respond violates the FDCPA.

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 950 (9th Cir. 2011), the court found that service of requests for admission on a pro se defendant without explaining that the requests would be deemed admitted after thirty days was, as a matter of law, "unfair or unconscionable" or "false, deceptive, or misleading" under the FDCPA.  Like Mr. Howe's requests here, the requests at issue in *McCollough* effectively requested the debtor to admit the collector's entire case against him and to concede all defenses.  *Id.* at 952.  The Ninth Circuit upheld the district court's entry of summary judgment in favor of the debtor on his FDCPA claim, holding that "[t]he least sophisticated debtor cannot be expected to anticipate

16

that a response within thirty days was required to prevent the court from deeming the requests admitted." *Id.*[11]

Mr. Howe urges this court not to follow *McCollough*. He maintains that this Ninth Circuit decision is not binding on this court and that it employs the "least sophisticated consumer" standard rather than the "unsophisticated consumer" standard that prevails in this circuit. He further maintains that the *McCollough* court was concerned that the statements the collector requested the debtor to admit were false and that the creditor knew they were false. Each of Mr. Howe's points is correct, but they do not compel a different result here.

First, though *McCollough* is not binding authority, it is instructive and persuasive. Second, the difference in legal standards between the Ninth and Seventh Circuits might make a difference in some cases, but it does not here. This court's analysis is based on the "unsophisticated consumer" standard. Third, the court agrees that Mr. Patterson has not presented evidence in this case that shows the statements in the Requests to Admit were false. But falseness is not the only factor that can make the requests, without advising of the consequences of timely denial, misleading or unfair. The requests in *McCollough* were not served with the complaint and summons, but months later. As explained in the preceding section, Mr. Howe's service of the requests to admit with the complaint and summons and without any statement of the consequence of lack of timely denials was

---

[11]    The Ninth Circuit also expressly rejected the argument Mr. Howe makes here—that if the requests for admission complied with the state trial rules they ought not to subject counsel to liability under the FDCPA. *See id.* at 951.

misleading—because it created the very sort of confusion as to the timing and manner of response that the Seventh Circuit condemned in *Marquez*.

In addition, as Mr. Patterson points out, the facts here are in some ways more compelling than those at issue in *McCollough*. Service of the requests with the summons could suggest to the unsophisticated debtor some endorsement by the court, and the requests were more likely to be overshadowed by the commanding nature of the complaint and summons.

To the extent that *McCollough* could be read to hold that any service of requests for admission, without advising of the consequence of failure to respond, constitutes a violation of the FDCPA, this court does not go that far. Rather, as already explained, the combination of documents served on Mr. Patterson at the same time rendered the requests misleading and unfair.

**E. Mr. Howe's Spokeo argument is unavailing here.**

Mr. Howe also contends that Mr. Patterson lacks the requisite standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to maintain his claim. *Spokeo* was not an examination of standing under the FDCPA, and Mr. Howe has not cited a single authority to support his argument that Mr. Patterson had to have suffered a subjective pecuniary or other harm to maintain a claim for violation. And indeed, this court and a legion of courts around the country have rejected post-*Spokeo* challenges in FDCPA cases. In *Neeley v. Portfolio Recovery Assoc., LLC*, 268 F. Supp. 3d 978 (S.D. Ind. 2017), this court surveyed several of those decisions. *See id.* at 981-82 (citing cases). This court also observed in *Neeley* that the Seventh Circuit

has made clear that FDCPA claims are evaluated under the "unsophisticated consumer" standard. *Id.* at 982 (citing *Pantoja*, 852 F.3d at 686). And because that is an objective test, it is "'unimportant whether the individual that actually received a violative [communication] was misled or deceived.'" 268 F. Supp. 3d at 982 (quoting *Lox*, 689 F.3d at 826). *See also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017) ("*Spokeo* does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact statutes creating legal rights, the invasion of which confers standing even though no injury would exist without the statute.") (internal quotation marks omitted); *Aguirre v. Absolute Resolutions Corp.*, 2017 WL 4280957, at *3 (N.D. Ill. Sept. 27, 2017) ("*Spokeo* does not indiscriminately sweep aside all the legal rights created by Congress that confer standing where no injury would otherwise exist.").

The prevalence of that view in the Seventh Circuit is also illustrated by decisions issued quite recently. *See Keys v. Collection Professionals, Inc.*, 2018 WL 1469006 (N.D. Ill. March 26, 2018) (plaintiff's receipt of misleading communication establishes concrete injury); *Derosia v. Credit Corp Solutions, Inc.*, 2018 WL 1513043, at *5 (E.D. Wis. March 27, 2018) ("However, 'a plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'" (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *McMahon v. LVNV Funding, LLC*, 2018 WL 1316736 (N.D. Ill. March 14, 2018) (same).

The principal rationale of the many post-*Spokeo* decisions rejecting standing

challenges in FDCPA cases can be distilled to this point: a debtor's receiving a

misleading communication or being the subject of an unfair means of collection

inflicts exactly the sort of injury Congress sought to prevent in enacting the FDCPA;

a violation of the FDCPA can give rise to an "injury in fact" because it is not a "'bare

procedural violation'" but rather an infringement on an individual's substantive

right conferred by Congress to receive truthful information in debt collection

communications." *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 349

(S.D.N.Y. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549).[12]

Nevertheless, the standing issue may be academic in Mr. Patterson's case.

He has presented evidence, by affidavit, that he *was* misled by the requests to

admit. *See* Dkt. 31-1. Mr. Howe argues that Mr. Patterson filed his affidavit too

late—with his reply in support of his motion for summary judgment—and that it

should not be considered. That is not persuasive for two reasons. First, Mr.

Patterson's "reply" was a consolidated brief in opposition to Mr. Howe's motion for

summary judgment and reply in support of his own, filed on September 27, 2017; it

---

[12]    Courts are not unanimous on this issue. For example, a panel of the Sixth
Circuit recently suggested that *Spokeo* places a constitutional limitation on
Congress's ability to declare that a violation of the FDCPA in itself establishes an
Article III injury: "We know of no circuit court decision since *Spokeo* that endorses
an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury.
Although Congress may 'elevate' harms that 'exist' in the real world before
Congress recognized them to actionable legal status, it may not simply enact an
injury into existence, using its lawmaking power to transform something that is not
remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616,
622 (6th Cir. 2018) (citations omitted).

was his first opportunity to respond to Mr. Howe's *Spokeo* argument raised just two days before, on September 25, 2017.  Second, Mr. Howe had and took the opportunity afforded by Local Rule 56-1(d) to file a surreply (Dkt. 33) to address the new evidence presented in Mr. Patterson's filing.  Mr. Patterson's affidavit was not untimely and in any event did not prejudice Mr. Howe.[13]

### F.  The court will not make a damages award at this time.

In his summary judgment brief, Mr. Patterson agrees that he has not shown actual damages, and he asks the court to award him the maximum statutory damage of $1000.  Though Mr. Howe has not directly challenged this request, the court will not enter summary judgment in an amount of statutory damages.   The Seventh Circuit has held that "the FDCPA provides for trial by jury in determining statutory . . . damages." *Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998). Even if there were no disputed facts, the need to exercise discretion in determining the amount of statutory damages to award makes the issue inappropriate for disposition on summary judgment.  As one court in this circuit has explained, section 1692k "is multifaceted and open-ended, granting the factfinder considerable discretion to set statutory damages." *Gillespie v. Blitt & Gaines, P.C.*, 123 F. Supp. 3d 1029, 1033–34 (N.D. Ill. 2015). "When there is a material dispute of fact to be resolved *or discretion to be exercised* in selecting a financial award, then

---

[13]     Interestingly, Mr. Howe also claims (Dkt. 33 at pp. 2-3) that Mr. Patterson's affidavit is irrelevant because the pertinent question is what effect the communications would have on a hypothetical unsophisticated consumer— interesting, because it tends to undermine Mr. Howe's standing argument.

either side is entitled to a jury. . . ." *BMG Music v. Gonzalez,* 430 F.3d 888, 892 (7th Cir. 2005) (emphasis added). By contrast, only "if there is no material dispute *and* a rule of law eliminates discretion in selecting the remedy, then summary judgment is permissible." *Id.* at 892–93 (emphasis added).  Because "[s]ection 1692k(b) channels, but does not eliminate in any circumstance, the jury's discretion to award statutory damages," the court determines that "summary judgment is not appropriate for statutory damages." *Gillespie*, 123 F. Supp. 3d at 1034.  In addition, Mr. Patterson has brought this case as a class action, and it is more appropriate to address remedies after the resolution of Rule 23 issues and in connection with a final judgment.

## Conclusion

Plaintiff Mark Patterson's motion for summary judgment (Dkt. 25) is GRANTED as to liability and DENIED as to amount of damages.  Defendant Howard Howe's motion for summary judgment (Dkt. 22) is DENIED.

So ORDERED.

Date: 3/30/2018

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-03364-DML-SEB |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## **<u>Order on Motions for Reconsideration (Dkts. 88, 89)</u>**

Defendant Howard Howe has asked this court to reconsider its order granting summary judgment in favor of the named plaintiff on his FDCPA claim (Dkt. 34) and its order certifying a class (Dkt. 81).[1]  The summary judgment order was issued three years ago and was followed by the appearance of new defense counsel, multiple discovery disputes, class certification briefing and decision, and the briefing and decision on numerous other motions.  Mr. Howe grounds both reconsideration motions primarily in Seventh Circuit decisions issued after this court's summary judgment order, beginning with *Casillas v. Madison Ave. Associates*, 926 F.3d 329 (7th Cir. 2019), and followed by several more recent decisions on the standing requirement in FDCPA cases.  Indeed, in the last few months, the Seventh Circuit has issued no fewer than eight decisions on FDCPA standing, including one in just the last two weeks.

---

[1]      Mr. Howe also asks the court to dismiss for lack of subject matter jurisdiction or, alternatively, to certify for interlocutory appeal (Dkt. 89).

The court grants the motions to reconsider because—and to the extent that—this court's discussion of standing in its summary judgment order cited a line of decisions from district courts in this circuit—including this one—that may now be inconsistent with these recent decisions of the Seventh Circuit, which before *Casillas* had not specifically addressed standing in the FDCPA context. And because no class can be certified if the proposed class representative lacks standing, it is appropriate to reconsider the class certification order as well. *See Brunett v. Convergent Outsourcing, Inc.,* 982 F.3d 1067, 1069 (7th Cir. 2020). To be clear, though, reconsideration is not (at least in this case) tantamount to a different result; the new binding authority simply requires a careful re-examination of the standing issues raised in this case.

**A.**   **A Brief Survey of the Seventh Circuit's *Casillas* and Post-*Casillas* Decisions**

In *Casillas*, the plaintiff claimed that the defendant had violated § 1692g—the provision requiring certain disclosures within a certain period of the initial communication to collect a debt—by not advising that the debtor was required to communicate in writing in order to trigger certain statutory protections. However, the plaintiff did not allege that this omission in the notice harmed her or created any real risk of concrete harm. She didn't allege, for example, that she had tried to dispute the debt or even considered contacting the defendant to dispute or verify the debt. The Seventh Circuit concluded, "Because the [defendant's] mistake didn't put Casillas in harm's way, it was nothing more than a "'bare procedural violation,'"

insufficient to confer standing.  *Id.* at 334 (quoting *Spokeo, Inc. v. Robins*, 136 S.
Ct. 1540, 1549 (2016)).

In *Larkin v. Finance System of Green Bay, Inc.,* 982 F.3d 1060 (7th Cir. 2020),
the Seventh Circuit expressly extended the reasoning of *Casillas* to claims under
1692e and 1692f (which are substantive prohibitions of certain conduct, as opposed
to procedural contents of a 1692g notice at issue in *Casillas*).  Section 1692e
prohibits false, deceptive, misleading representations; section 1692f prohibits unfair
or unconscionable debt collection practices.   Still, however, an "FDCPA plaintiff
must allege a concrete injury regardless of whether the alleged statutory violation is
characterized as procedural or substantive." Ms. Larkin claimed that the creditor
violated these provisions by sending a collection letter that said, "You want to be
worthy of the faith put in you by your creditor. . . . We are interested in you
preserving a good credit rating with the above creditor." The district court had
dismissed for failure to state a claim under the FDCPA.  On appeal, the Seventh
Circuit said that the case instead should be dismissed without prejudice for lack of
standing.  *Id.* at 1063.

The *Larkin* court explained that the case or controversy requirement limits
federal court jurisdiction to "concrete disputes presented in a form historically
recognized as appropriate for judicial resolution in the Anglo-American legal
tradition."  *Id.* at 1064.  "At the pleading stage, the standing inquiry asks whether
the complaint "clearly . . . alleges facts demonstrating each element in the
[standing] doctrinal test."  *Id.*  The court found the plaintiff's allegations lacking the

required injury in fact, which not only requires invasion of a legally protected interest, but must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*.  The court focused on the requirement that the plaintiff's injury be "both concrete *and* particularized."  "Particularized" means that the plaintiff was injured or affected in a "personal and individual way" as opposed to a general grievance shared by all members of public.  *Id*.

The court went on to explain that "[t]he concreteness requirement can be trickier." *Id*.  A physical harm or monetary loss (generally characterized as "tangible") is easy to identify, but intangible harms raise more difficult questions. And though Congress can "identify and elevate historically non-cognizable intangible harms to the status of cognizable injuries," the constitution limits the court's power to redress only concrete personal injuries arising from the violation. In refusing to extend jurisdiction for "bare procedural violations," the court of appeals declared that it was simply applying the principle the Supreme Court had announced in *Spokeo*.  The court also noted that the plaintiff had not articulated any injury—tangible or intangible—from the allegedly offending language in the letter she received.[2]

*Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020), was issued the day after *Larkin*. Convergent sent Ms. Brunett a collection letter demanding payment of a debt just over $1000  It offered to accept 50% of the

---

[2]     At oral argument plaintiff's counsel was given an opportunity to articulate some detriment or appreciable risk of detriment the plaintiff had suffered but did not do so.  *Id*. at 1066.

4

balance and added that if she couldn't afford that, she could contact Convergent to discuss other options.  The letter went on to say that if the creditor forgave more than $600, it would be required to report that to the IRS.

Ms. Brunett alleged the statement about reporting to the IRS violated the FDCPA because it threatened action that cannot legally be taken and thus was a false statement.  The Seventh Circuit noted that in these particular circumstances, the statement could be accurate, but rather than determining the merits, the court turned to the plaintiff's standing.

During her deposition, Ms. Brunett acknowledged that she had not paid anything after receiving the letter and that the statement about possibly reporting to the IRS did not affect her credit rating or discourage anyone from doing business with her.  Instead, she testified that the letter was "confusing," but the court observed that she did not "tie that confusion to any injury." *Id*. at 1068.  The Seventh Circuit dismissed the assertion that confusion is itself an injury.  It held that it is not enough for the plaintiff to have been confused; the plaintiff must have acted (or not acted, as the case may be) because of that confusion. And being led to hire a lawyer because of that confusion "does not change the evaluation." "A desire to obtain legal advice is not a reason for universal standing."  *Id*. at 1069.

**The court also** rejected a distinction between procedural and substantive violations in the standing analysis, asserting that the need for an injury in fact is a constitutional rule that "does not depend on how one characterizes the statute involved." *Id*. at 1068. **Finally, the court rejected the plaintiff's argument that the**

case should not be dismissed because the class members may have standing.  If the named plaintiff lacks standing, class certification should be denied.  *Id*.

*Gunn v. Thrasher, Buschmann & Voelkel, P.C.,* 982 F.3d 1069 (7th Cir. 2020), involved a letter sent to collect unpaid homeowner's assessments to a homeowners' association.  The letter included the statement that "If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose" it.  The plaintiffs made no payment or other response to the collection letter.  When the creditor filed a collection suit it did not seek foreclosure.

The plaintiffs alleged in their FDCPA case that though the statement was not false, it was misleading because no rational creditor would foreclose on a two-thousand-dollar homeowner's assessment.  This court dismissed the complaint on the pleadings because the statement about foreclosure was true. On appeal, the litigants focused their arguments on whether a true statement can nevertheless be misleading because it is unlikely. The Seventh Circuit instead focused on the plaintiffs' standing, which hadn't been raised in this court or in the initial appellate briefing.

In their supplemental briefing, the Gunns claimed they suffered annoyance and intimidation in receiving such a letter.  *Id*. at 1071.  The Seventh Circuit found that wasn't enough:  "[T]the Supreme Court has never thought that having one's nose out of joint and one's dander up creates a case or controversy."  *Id*. at 1072.

*Bazile v. Finance System of Green Bay, Inc.,* 983 F.3d 274 (7th Cir. 2020), is a noteworthy decision because it addresses the standing requirement beyond the

pleading stage. The court held that though a complaint may survive dismissal for lack of standing, that does not end the inquiry.  If the truthfulness of the allegations necessary to establish standing has been called into doubt, the trial court must address that dispute the same way it deals with other factual issues that determine whether it has subject matter jurisdiction, *i.e.*, an evidentiary hearing.  *Id*. at 277.[3]

At the pleading stage, it may be enough to have general factual allegations of injury from the defendant's conduct that "plausibly suggest" the elements of standing.  *Id*. at 278.   But if those standing allegations are questioned—either by the court or the other party—then the plaintiff "must support each controverted element of standing with competent proof," which the court described as "a showing by a preponderance of evidence, or proof to a reasonable probability that standing exists."  *Id*.

The court also emphasized that district courts have a responsibility to police subject matter jurisdiction and that if the court has notice that the facts alleged in plausible support of standing are false or if the complaint "fairly shrieks" that there's no jurisdiction, then the court must conduct proceedings and get sufficient evidence  to resolve the doubt.  *Id*.

---

[3]     "The appropriate mechanism to resolve factual disputes about standing is an evidentiary hearing on the defendant's motion to dismiss under Rule 12(b)(1)."  983 F.3d at 277.

*Spuhler v. State Collection Service, Inc.,* 983 F.3d 282 (7th Cir. 2020), is the companion case to *Bazile*.  It was heard by the same panel, was written by the same judge, and presented the same issue.  It was brought as a class action.  And like this case, *Spuhler* had been decided on the merits of the FDCPA claim in favor of the plaintiff on summary judgment.  On appeal, the Seventh Circuit held that at summary judgment, the plaintiffs also were required to supply evidence of "specific facts" that, "taken as true, show each element of standing."  *Id.* at 285 (citations omitted).  Because the record did not contain any evidence that the absence of a statement about accruing interest had any effect on what these plaintiffs did in the context of managing their debts or responding to letters, the Seventh Circuit vacated the judgment.  However, the court rejected the defendant's argument that the plaintiffs lacked standing because they failed to allege a concrete injury in fact in their complaint, first, because the case was at the summary judgment—not pleading—stage.  Moreover, the court held that even if a complaint "'omitted essential jurisdictional allegations,' but evidence later demonstrates that the court has jurisdiction, 'the deficiency in the complaint is not fatal.'"  *Id.* (quoting *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530 (7th Cir. 1985)).

In *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020), the plaintiff brought an FDCPA claim against a collection company that sent her a letter that overstated her balance by about $100.  On appeal, the defendant challenged the district court's order denying its motion to compel arbitration.  The Seventh Circuit did not reach that issue, finding instead that the plaintiff lacked standing because

she had not alleged that this misstatement of her balance caused her any harm or created "any appreciable risk of harm to her"—that she indeed admitted that the letter did not affect her at all. *Id.* at 900.

In *Smith v. GC Limited Partnership*, 986 F.3d 708 (7th Cir. 2021), the court reiterated its determination that the principle announced in *Casillas* applies not only to claimed procedural violations of the FDCPA but to substantive violations as well. Ms. Smith alleged that the collection company's letter advising that a dispute had to be in writing violated section 1692g(a)(3). In finding she lacked standing, the court observed that though she said she was confused by the letter, she did not contend that the alleged lack of clarity "led her to take any detrimental step." *Id.* at 710. The court further noted that even when her standing was challenged in the district court, she could not articulate a detriment. *Id.*

And on March 11, 2021, the Seventh Circuit issued its decision in *Pennell v. Global Trust Management*, 2021 WL 925494 (7th Cir. March 11, 2021). *Pennell* addressed an alleged violation of entirely different provisions in the FDCPA not considered in the Seventh Circuit's earlier standing decisions. Section 1692c(c) prohibits a debt collector from communicating with a debtor who advises the collector that she refuses to pay and directs it to stop any further communications; section 1692c(a)(2) prohibits a debt collector from communicating directly with a debtor who is represented by counsel. Ms. Pennell alleged Global Trust sent her a letter in violation of both these provisions. She further claimed that the letter caused her "stress and confusion" and caused her to think her demand to cease

communications had been futile.  It also caused her to question whether she was still represented by counsel.  *Id*. at *3.  Noting that it had found in *Brunett* that confusion or stress is not enough to establish standing, the court said Ms. Pennell failed to show that receiving the letter "led her to change her course of action or put her in harm's way."  *Id*. at *4.

**B.**   <u>**Application of Seventh Circuit Standing Authority to this Case**</u>

What is the upshot of all these decisions to the case at hand?  In his complaint initiating this lawsuit, Mr. Patterson alleged that Mr. Howe, a debt collector, caused the Hamilton County Sheriff to serve on him a complaint and attached documents, including a summons and "Requests to Admit."  He further alleged that the Requests to Admit did not advise that they would be admitted if not denied or objected to within thirty days and that that produced a violation of the FDCPA's proscription of false, deceptive, or misleading communications or means and unfair or unconscionable means of collecting a debt.  The complaint does not include any further allegation of injury.

Before the parties had engaged in any discovery, and at the request of counsel, the court agreed that the parties could first  brief the issue of whether Mr. Howe's service of the complaint, summons, and requests to admit at the same time (without advising of the consequence of not responding to the latter within thirty days) violated the FDCPA.  Mr. Howe filed his motion for summary judgment first

(Dkt. 22) and did not raise any standing issue.[4]  Mr. Howe first raised the

argument, among many others, that Mr. Patterson lacked standing in his brief in

response to Mr. Patterson's motion for summary judgment, citing *Spokeo* in support

(Dkt. 29 at p. 3).  As part of his reply to that response, Mr. Patterson submitted an

affidavit[5] testifying that he had defenses to the creditor's claim and did not want to

admit the allegations of the complaint.  (Indeed, he had filed an answer denying he

owed the debt.)  He further testified that had he known that not responding to the

requests to admit within thirty days meant that they would automatically be

admitted, he would have responded to them and that because he did not know this,

he did not respond.  (*See* Dkt. 31-1 ¶¶ 7-10.)

   Though Mr. Howe argues that the injury Mr. Patterson asserts in his

affidavit is insufficient as a matter of law, his primary arguments are related to the

procedural posture of the case and to Mr. Howe's contentions that the court should

not consider Mr. Patterson's affidavit specifying his injury.  The court will address

those arguments first and then will address Mr. Howe's argument that even if the

court considers Mr. Patterson's affidavit, it is insufficient to establish his standing.

---

[4]     The court had not raised standing by this point either, because the prevailing
view among the district courts in this circuit interpreting *Spokeo* in the FDCPA
context—including this court—was that the complaint met standing requirements.

[5]     The court has already rejected Mr. Howe's argument that Mr. Patterson filed
his affidavit too late in the summary judgment process, and the court reaffirms that
conclusion here.  *See* Dkt. 34 at pp. 20-21.

**1. Mr. Patterson is permitted to cure the standing deficiency in his complaint as part of the summary judgment record.**

Mr. Howe first argues that because Mr. Patterson's complaint does not allege facts to meet the requirements for standing for FDCPA cases recently articulated by the Seventh Circuit, this case should be dismissed for lack of subject matter jurisdiction—in short, that his affidavit is too late. The Seventh Circuit has recently made clear, however, that if a complaint "'omitted essential jurisdictional allegations,' but evidence later demonstrates that the court has jurisdiction, 'the deficiency in the complaint is not fatal.'" *Spuhler*, 983 F.3d at 285 (quoting *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530 (7th Cir. 1985)).

**2. Mr. Patterson's stipulation that violation could be determined on summary judgment does not somehow preclude him from making assertions in support of standing that may be disputed.**

Mr. Howe's arguments that this court should not take Mr. Patterson's affidavit into account in determining subject matter jurisdiction are grounded in a suggestion that Mr. Patterson engaged in some subterfuge or sandbagging—that he represented there were no disputed facts when he knew there were (the existence of an injury-in-fact that comports with current Seventh Circuit standing requirements). That is simply not consistent with the procedural history of this case. *Both parties* stipulated that whether the service of the papers identified above, without stating the consequence of not making a separate response to the requests to admit (which were not to be filed with the court like the answer but served on Mr. Howe, and not within the same timeframe for filing an answer) constituted a violation of the FDCPA should be determined first. Neither the court nor counsel addressed at

12

A34

that point in the case the facts underlying standing, which is not a substantive

element of an FDCPA claim but rather a requirement for the court's subject matter

jurisdiction.[6]  With his motion to reconsider, Mr. Howe has tried to rewrite the

procedural history of this case in light of subsequent caselaw developments.

Nothing in this sequence of events supports Mr. Howe's contention that Mr.

Patterson's agreement that violation could be determined as a matter of law

"sandbagged" Mr. Howe to prevent him from taking discovery on the injury issue.[7]

Further, as explained below, Mr. Howe will have an opportunity to conduct

discovery on Mr. Patterson's assertion of injury in fact.

### 3. Mr. Patterson's affidavit will not be disregarded because he failed, in moving for summary judgment, to assert his injury as an undisputed fact.

Mr. Howe has also made the related argument that in his Statement of

Material Facts Not in Dispute made in connection with his motion for summary

judgment, Mr. Patterson failed to assert his injury as an undisputed fact.  This

omission, Mr. Howe argues, in effect allowed Mr. Patterson to amend his complaint

in the midst of summary judgment briefing, violated the parties' stipulation as

discussed above, and violated Local Rule 56-1.  The court has already addressed the

---

[6]     *See supra* note 4.

[7]     Though "injury" for purposes of standing is not synonymous with "damages" recoverable under the FDCPA, Mr. Howe clearly and knowingly chose not to do discovery on damages issues before moving for summary judgment.  He was not misled by the scope of the parties' stipulation about summary judgment issues.

first and second arguments. The third—the alleged violation of the local rule—
touches on an overarching problem with most of Mr. Howe's arguments.

Mr. Howe's arguments are flawed by his muddling of the requirements for
standing to support the court's exercise of jurisdiction with the substantive
elements for an FDCPA violation. That in turn creates a misapprehension of the
plaintiff's burden in establishing standing. Mr. Patterson was not required at the
summary judgment stage to demonstrate that it is undisputed that he suffered an
injury for Article III standing; that was his burden for demonstrating a substantive
FDCPA violation. If it were otherwise, the court could rarely determine its subject
matter jurisdiction until after trial, because an FDCPA defendant will usually
contest that the plaintiff was injured. Rather, the Seventh Circuit has explained
that when the case reaches the summary judgment phase, the plaintiff must
demonstrate standing by affidavit or other evidence of specific facts that, *taken as
true*, support each element of standing. *Spuhler*, 983 F.3d at 285-86 (citing *Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). And in *Bazile*, 983 F.3d at 278, the
Seventh Circuit put it this way: "[T]he plaintiff must support each controverted
element of standing with 'competent proof,' which we've understood as 'a showing by
a preponderance of the evidence, or proof to a reasonable probability, that standing
exists.'" (quoting *McNutt v. GMAC*, 298 U.S. 178, 189 (1936), and *Retired Chicago
Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)).

Mr. Howe's argument that Mr. Patterson failed to assert and establish his
standing as an undisputed fact at the summary judgment stage of the case is not an

accurate statement of Mr. Patterson's burden.  Of course the court must determine

whether it has subject matter jurisdiction in order to enter final judgment in this

case; final judgment was not entered upon the granting of the plaintiff's motion for

summary judgment.  And because the standing landscape in FDCPA cases has

changed markedly since that order, the court will examine Mr. Patterson's standing

consistent with the current authority, as explained below.  It will not, however,

disregard the evidence he has presented.

   **4.  Mr. Howe's argument that, even if it is considered, Mr. Patterson's
   affidavit is insufficient to establish standing cannot be fully
   determined at this point.**

   Mr. Howe has argued that even if the court does consider Mr. Patterson's

affidavit, it should nevertheless find it insufficient to meet the requirements for

standing articulated in the recent Seventh Circuit decisions the court surveyed in

the first section of this order.  Several of these arguments (at Dkt. 90 pp. 24-29) are

mere repetition of merits arguments the court has already rejected and finds no

reason to revisit.  Whether Mr. Patterson's assertions meet the requirements for

standing under *Casillas* and its progeny is only briefly discussed by Mr. Howe, and

the court finds his *legal* arguments at this point generally unpersuasive. But now is

not the time to make a final determination. Mr. Howe also claims that he disputes

Mr. Patterson's *factual* assertions of an injury in fact and that the parties'

stipulations about briefing summary judgment deprived him of the opportunity to

conduct discovery on Mr. Patterson's assertions of injury.  Fair enough.  Mr. Howe

can take discovery, which likely won't be extensive:  Mr. Patterson's deposition,

perhaps.  If the facts necessary for standing are ultimately disputed, the court will

hold an evidentiary hearing, as the Seventh Circuit has directed (*see Bazile*, 983

F.3d at 277), and will consider those jurisdictional facts that have been established

by "competent proof," or "by a preponderance of the evidence," or "to a reasonable

probability."  *Id.* at 278.

<u>Conclusion</u>

The defendant's motions to reconsider (Dkts. 88, 89) are GRANTED IN PART

AND DENIED IN PART as explained in this order.  The motion to dismiss for lack

of subject matter jurisdiction included in Dkt. 89 is DENIED WITHOUT

PREJUDICE.  The defendant's alternative request to certify for interlocutory

appeal (Dkt. 89) is DENIED.  Discovery of any matter to be determined in

connection with Mr. Patterson's Article III standing shall be completed by June 23,

2021.  This case is set for a telephone status conference on June 30, 2021, at 10:00

a.m. to address what further procedures, such as supplemental briefing and/or an

evidentiary hearing, are appropriate to determine standing.  The court will provide

counsel call-in access information in advance of the status conference.

So ORDERED.

Date: 3/23/2021

*Debra McVicker Lynch*

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system

16

A38

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-03364-DML-SEB |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## Order on Defendant's Motion to Compel (Dkt. 130)

Defendant Howard Howe moves to compel plaintiff Mark A. Patterson to answer certain deposition questions and produce his retention/fee agreement with his lawyer.  He asserts that the information is relevant to whether Mr. Patterson has standing to bring his claim under the Fair Debt Collection Practices Act.

## **Background**

In 2018, the court entered summary judgment on liability (not damages) in favor of the plaintiff on his claim that Mr. Howe's use and service of requests for admission in the manner he followed when he sued Mr. Patterson in state court on behalf of a client violated the FDCPA.  (Dkt. 34)  When Mr. Howe, an attorney, sued Mr. Patterson to collect a debt he allegedly owed to Mr. Howe's client, Mr. Howe arranged for service on Mr. Patterson by a local sheriff's office of a summons, the complaint, and a document titled "Requests to Admit."  None of the documents served on Mr. Patterson explained the consequence, set forth in Indiana Trial Rule 36, that requests for admission not denied within 30 days are deemed admitted.

1

Although Mr. Patterson timely filed an answer to the complaint and denied owing the debt he was sued for, he did not serve an answer to the Requests to Admit. They included requests that (a) the material allegations in the complaint are true and the plaintiff is entitled to judgment as a matter of law and (b) Mr. Patterson has no valid counterclaim or offset to the plaintiff's claims. Ultimately, a mediator was appointed by the state court in the collection matter, and the parties settled the case. Mr. Patterson agreed to the entry of a judgment against him and to pay the judgment amount in installments.

Several years after the court entered summary judgment, Mr. Howe asked the court to reconsider. The court revisited its ruling because of interim decisions by the Seventh Circuit regarding a plaintiff's standing to complain of a defendant's violation of an FDCPA provision. *See* Order at Dkt. 106. As the court's survey of the Seventh Circuit's FDCPA standing decisions indicated, the cases require a plaintiff to show that the defendant's violation of the FDCPA put the plaintiff in harm's way or led the plaintiff to do something *vis-à-vis* the debt that he otherwise would not have done absent the violation. Under these recent cases, an allegation or proof that an FDCPA defendant's debt communication contained false or misleading information that caused confusion or stress is not sufficient to create standing. *Id.* at 8-9. To establish standing in conjunction with the court's adjudication of Mr. Howe's motion to reconsider, Mr. Patterson referred to his affidavit testimony (filed with a reply brief earlier in the case, Dkt. 31-1, ¶ 9) that he would have responded within 30 days to the requests for admission had he

2

known that they would automatically be admitted if responses were not made in that period.

Because the legal landscape for FDCPA standing had drastically changed in the Seventh Circuit and because Mr. Howe had not had an opportunity to test Mr. Patterson's factual assertions in support of standing, the court re-opened discovery to allow Mr. Howe to seek discovery relevant and proportional to the standing inquiry.  Dkt. 106 at 15-16.

In the course of that discovery, Mr. Patterson refused to produce his fee agreement with the lawyer, Robert Duff, who is representing him in this FDCPA case, and he refused to answer the following deposition questions, all of which are the subject of Mr. Howe's motion to compel:

1. Did Mr. Duff ever tell you to consider withdrawing the deemed admissions in the collection action?

2. After you retained Mr. Duff to represent you in the federal FDCPA case, did you keep him updated as to what was happening in the state court collection case, including the fact that you were going to be going to mediation?

3. Does the fee retention agreement you entered with Mr. Duff specify what attorney's fees you'll pay for his representation?

4. How much have you paid Mr. Duff to date in the federal case?

The court addresses below the parties' arguments about the relevance of these discovery requests and the applicability of the attorney-client privilege, which Mr. Patterson has asserted, to them.

## Analysis

I.   **Mr. Howe contends that he is entitled to discover the scope of Mr.
     Duff's representation of Mr. Patterson and the contents of legal
     <u>advice given by Mr. Duff regarding the collections case, if any.</u>**

Mr. Howe asserts that Mr. Patterson may lack standing *if* he was not truly

acting in a *pro se* capacity throughout the state court collections case and thus had

an opportunity to receive legal advice during those proceedings about the ability

under Ind Tr. Rule 36(B) to move the court to permit the withdrawal or amendment

of his admissions.  *See* Rule 36(B) ("Any matter admitted under this rule is

conclusively established unless the court on motion permits withdrawal or

amendment of the admission.")  He suggests that if Mr. Patterson had the

opportunity to obtain legal advice and that that legal advice would have included

the information that he could seek to withdraw his admissions, then the fact that he

did not seek their withdrawal demonstrates that he did not believe he was in fact

harmed by them.

Before the court reaches the merits of the discovery issues presented, it must

emphasize two related points.  First, the court does not suggest that it is accepting

Mr. Howe's assertions as valid standing arguments.  In other words, it does not at

this point endorse the view that if Mr. Patterson received legal advice at the

relevant time and that if he was advised he could seek to withdraw the deemed

admissions that he would lack standing.  The parties have not fully briefed, nor has

the court decided, the legal parameters of standing in this case.  Second, the court's

ultimate resolution of the motion to reconsider its summary judgment order is

limited to standing; all other arguments about whether Mr. Howe's communications with Mr. Patterson constitute a violation of the FDCPA have already been decided or waived. The court once again reminds Mr. Howe that standing is not a substantive element of an FDCPA claim; it is, rather, a prerequisite to the exercise of federal jurisdiction in any action.

The question presented by the motion to compel is simply whether Mr. Howe is entitled to certain information pertinent to the standing arguments he intends to make. That said, apart from the engagement agreement (discussed below), Mr. Howe already has all the non-privileged information he reasonably needs to make his arguments about standing. He knows that Mr. Patterson retained lawyer Robert Duff to file this FDCPA case *before* the mediation occurred in the collection case, at which the case was settled by an agreed judgment. He knows that Mr. Patterson testified that he first consulted with Mr. Duff months after he was served in the collection action and the admissions had been deemed "conclusively established" under Ind. Tr. Rule 36(B).

As explained below, the court will permit Mr. Howe to test the veracity of Mr. Patterson's testimony about when he retained Mr. Duff and the general scope of that representation by requiring the production of a redacted version of the fee/retention agreement between Mr. Patterson and Mr. Duff. However, the other matters that Mr. Howe seeks to compel are protected by the attorney-client privilege or are not relevant to Mr. Howe's theories about Mr. Patterson's standing.

## II.   The relevant information from the fee/retention agreement is not privileged.

As noted, Mr. Howe has articulated reasons that the timing of Mr. Duff's representation of Mr. Patterson, the general subject matter of that representation, and the basis on which Mr. Patterson owes fees to Mr. Duff are relevant to arguments he intends to make about Mr. Patterson's standing.  Mr. Patterson has not demonstrated that any of that information is privileged.  Indeed, the general subject matter of a lawyer's representation, the timing of retention, and fee arrangements are not privileged unless that information itself reveals the contents of communications between lawyer and client exchanged for the purpose of obtaining or giving legal advice and intended to be maintained in confidence.  *See Sandra T.E. v. South Berwyn School Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2010) (attorney-client privilege protects from forced disclosure the contents of communications between lawyer and client made in confidence and for the purpose of obtaining or providing legal advice; subject matter of representation as revealed in retention agreement may bear on the privilege); *In re Walsh,* 623 F.2d 489, 494 (7th Cir. 1980) ("As a general rule, matters involving the receipt of fees from a client are not privileged as they do not involve confidential communications."); *McCullough v. Fraternal Order of Police,* 304 F.R.D. 232, 238-39 (N. D. Ill. 2014) (noting that the general nature and dates of lawyer's representation may be disclosed where germane to legal issues in a case).

Portions of a fee/retention agreement may be privileged; they may memorialize advice from lawyer to client about his or her claims.  Portions may also

6

A44

be irrelevant even if not privileged.  Further, this court is sensitive to protecting the attorney-client relationship.  It will not encourage parties to routinely meddle in the other side's attorney-client relationship via discovery requests for fee agreements, and thus will permit Mr. Patterson to redact the fee/retention agreement so that it reveals only the specific matters that could be relevant to Mr. Howe's arguments about standing.  The court will permit Mr. Patterson to redact all portions of the fee/retention agreement except those revealing (a) the parties to the agreement, (b) the date the agreement was entered, (c) identity of the general subject matter of the representation, and (d) Mr. Patterson's individual responsibility for paying attorneys' fees.  Mr. Patterson must produce the redacted fee/retention agreement within 10 days.

## III.   The contested deposition questions seek privileged or irrelevant information.

### A. The privileged communications

Two of the contested deposition questions clearly ask for information protected from disclosure by the attorney-client privilege because they ask Mr. Patterson to disclose the contents of advice he may have received from attorney Duff.  These questions are:

1   Did Mr. Duff ever tell you to consider withdrawing the deemed admissions in the collection action?

2   After you retained Mr. Duff to represent you in the federal FDCPA case, did you keep him updated as to what was happening in the state court collection case, including the fact that you were going to be going to mediation?

Mr. Howe argues, however, that (a) the privilege cannot apply because attorney Duff did not enter an appearance for Mr. Patterson in the state court collection matter and (b) if a communication between attorney Duff and Mr. Patterson concerning the collection matter is privileged, then it follows that Mr. Patterson was not truly a *pro se* litigant in that case, and the foundation for this court's summary judgment ruling has crumbled.  The court rejects both these arguments.  First, the existence of an attorney-client relationship that underlies a privileged communication is not tied to formal employment or a filed appearance of the lawyer; rather, the question is whether a person communicated with a lawyer in his or her professional capacity and in confidence for the purpose of seeking legal advice.  Mr. Patterson need not have retained Mr. Duff to represent him in the collections case for them to have had privileged communications related to Mr. Patterson's legal interests in that case.  *See Westinghouse Elec. Corp v. Kerr-McGee Corp.,* 580 F.2d 1311, 1317 (7th Cir. 1978) (a lawyer-client professional relationship "is not dependent upon the payment of fees nor . . . upon the execution of a formal contract."); 8 *Wright & Miller, Federal Practice and Procedure,* § 2017 (3d ed.) ("It is not necessary that an attorney-client relation have actually existed.  One who consults a lawyer with a view to obtaining professional legal services from him or her is regarded as a client for purposes of the privilege.")

Second, it does not follow from the fact that Mr. Patterson may have sought and received legal advice from Mr. Duff at some point during the pendency of the collections case that Mr. Howe's manner of simultaneous service of the Requests to

Admit and summons/complaint on consumer debtors like Mr. Patterson did not

violate the FDCPA, as this court has already ruled.[1]  Further, the court is requiring

Mr. Patterson to provide the date and general subject matter of representation as

part of his production of the fee/retention agreement, and Mr. Howe can use that

information to make the arguments he wishes to advance about Mr. Patterson's

standing.

### B. The remaining information

As to the remaining contested deposition questions, one is answered via the

court's ordered production of the redacted fee/retention agreement (the question

whether that agreement specifies the fees Mr. Patterson personally will pay for Mr.

Duff's representation) and the other asks for irrelevant information.  The latter

asks how much Mr. Patterson has paid Mr. Duff to date in this FDCPA case. The

court sees no connection between that information and the theories about standing

Mr. Howe intends to argue.  Whether and the extent to which Mr. Patterson has

already paid attorneys' fees to Mr. Duff for his services in this litigation does not

---

[1]    And as the court explained above, the question of whether Mr. Howe violated
the FDCPA has already been affirmatively decided in this case and will not be
reconsidered.  Rather, the court will consider only whether Mr. Patterson has
sustained a cognizable injury for purposes of this court's jurisdiction to provide a
remedy for that violation or whether he suffered a "bare procedural violation."  If
Mr. Patterson is found to lack standing, that will of course mean that the court
lacks jurisdiction to issue a judgment, but the court has no intention to revisit its
evaluation of the substantive elements of Mr. Patterson's FDCPA claim.  Mr. Howe
will do well to keep this distinction in mind rather than muddling his standing
arguments with the question of whether the combination of communications he sent
to Mr. Patterson was inherently misleading.  *See* Dkt. 34 at pp. 13-18.

9

provide insight about Mr. Patterson's access to legal advice before he settled the collections case.

The court thus DENIES Mr. Howe's motion to compel with respect to all four deposition questions.

## Conclusion

Mr. Howe's motion to compel (Dkt. 130) is GRANTED IN PART and DENIED IN PART. Mr. Patterson must produce a redacted version of the fee/retention agreement consistent with this order within 10 days.

By separate order, the court will set a briefing schedule on the sole remaining issue in this case—whether Mr. Patterson has standing to obtain a remedy for Mr. Howe's violation of the FDCPA.

So ORDERED.

Date: 12/16/2021

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

10

A48

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK A. PATTERSON,   )
          )
     Plaintiff,  )
          )
     v.    )  No. 1:16-cv-03364-DML-SEB
          )
HOWARD HOWE,    )
          )
     Defendant. )

## Order on Mr. Howe's Motion to Strike and on Mr. Patterson's Standing

### I. Introduction

After the decision of the Seventh Circuit Court of Appeals in *Casillas v. Madison Ave. Associates*, 926 F. 3d 329 (2019), and several decisions that followed, this court reexamined its pre-*Casillas* determination of Mr. Patterson's standing[1] to obtain a remedy for Mr. Howe's violation of the FDCPA and to represent a certified class. Dkt. 106. That reconsideration order permitted Mr. Howe to take discovery he had chosen not to take earlier on the factual assertions underlying Mr. Patterson's position that he does meet the standing requirement. The court made clear, however, that (1) its reexamination was not tantamount to a finding that Mr. Patterson lacks standing, and (2) the court's determination that Mr. Howe violated the FDCPA is not the subject of reexamination. *See id.* at 2, 15.

---

[1] Mr. Howe first challenged Mr. Patterson's standing in the briefing on cross-motions for summary judgment, and this court rejected that challenge. *See* Dkt. 34 at pp. 18-21.

After the court's order on the motions to reconsider, the Supreme Court issued its decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a case brought under the Fair Credit Reporting Act.  *Ramirez*, like the recent Seventh Circuit decisions, focuses on the Article III injury requirement, but it also makes clear that each member of a class must have standing to recover.  Following *Ramirez*, class counsel acknowledged that all the members of the certified class could not demonstrate standing under the *Casillas/Ramirez* framework and agreed to decertification of the class.  What therefore remains is determining whether Mr. Patterson himself has the requisite standing to obtain a remedy for Mr. Howe's violation of the FDCPA.

Mr. Howe has completed his discovery on that issue and the parties have filed further briefing on the standing issues.  Dkts. 137, 143, 147.  Mr. Howe has also moved to strike Mr. Patterson's affidavit, submitted over four years ago in connection with summary judgment briefing.  Dkt. 138.  All standing issues and the related motion to strike are now fully briefed.  The court directed the parties to identify in their briefing any specific factual disputes pertinent to standing that they believe necessitate an evidentiary hearing.  Dkts. 115, 133.[2]  Neither has done

---

[2]     The court included this direction because the Seventh Circuit has held that the appropriate mechanism for resolving factual disputes underlying standing is an evidentiary hearing.  *See Bazile v. Finance System of Green Bay, Inc.,* 983 F. 3d 274, 277 (7th Cir. 2020).

so.[3]  The court agrees that it can rule on the evidence and argument already

submitted.

The court has carefully examined the parties' arguments and the evidence

presented on the question of Mr. Patterson's standing.  As detailed below, Mr.

Howe's positions that Mr. Patterson's 2017 affidavit should be stricken and that he

lacks Article III standing rest on (1) a selective reading and mischaracterizations of

Mr. Patterson's deposition testimony and (2) an unsupportable and untenable

application of standing doctrine to the evidence presented.

The claims and evidence in this case have been fully set forth in earlier

opinions and will not be repeated here but only supplemented as necessary to

address the pending issues.

## II.    Analysis

### A.  The motion to strike Mr. Patterson's 2017 affidavit is based on a selective reading and mischaracterizations of Mr. Patterson's deposition testimony.

When Mr. Howe challenged Mr. Patterson's standing in connection with

briefing of the merits issues at the summary judgment stage, Mr. Patterson

submitted an affidavit in which he testified, among other things, that (1) he had

defenses to the complaint and did not want to admit all the allegations of the

---

[3]      Mr. Howe advised the court in his briefing that he does not believe there are
any disputed facts and reserved the right to change his position if Mr. Patterson
"attempts to submit new evidence with his brief."  Dkt. 137, fn. 2.  Mr. Patterson did
not submit any evidence outside his affidavit and deposition testimony.  And as the
discussion to follow shows, Mr. Howe's challenges to Mr. Patterson's standing focus
not on disputes about Mr. Patterson's view of the facts but rather on what to make
of those facts.

3

complaint, (2) he did not know that if he failed to respond to the Requests to Admit within 30 days the requests would be automatically admitted, (3) had he known this, he would have responded within 30 days, and (4) because he did not know this, he did not respond to the Requests to Admit.  Dkt. 31-1.[4]

Mr. Howe now moves to strike this affidavit, arguing that Mr. Patterson's more recent deposition testimony is in conflict with his affidavit.  *See* Dkt. 138 ¶¶ 14-23.  Mr. Howe identifies these purported inconsistencies with citations to Mr. Patterson's deposition testimony that (1) he would "rather defer" to his counsel to identify what specific defenses he had to the complaint and their legal ramifications; (2) it was hard to speculate on what he would have done differently had he been advised of the consequence of not responding to the Requests to Admit within 30 days; and (3) that it was unclear to him "exactly how [he] would have answered or responded to certain Requests to Admit.  *Id.*

Even without any further context—just on its face—the court does not see contradictions between the affidavit and deposition testimony that would warrant the striking of the former.[5]  There's no contradiction between Mr. Patterson's

---

[4]    At the summary judgment stage, Mr. Howe also argued that the affidavit was not timely, Dkt. 33 at pp.1-2, but the court determined the argument was without merit.  Dkt. 34 at pp. 20-21.

[5]    And though the court's ruling is not based on this distinction, Mr. Patterson correctly points out that the doctrine on which Mr. Howe relies (the "sham affidavit rule") applies when a later-drafted affidavit contradicts deposition testimony, not the other way around.  This is a meaningful distinction.  An affidavit can be prepared under circumstances far more amenable than deposition testimony to careful crafting by counsel, without follow-up and questioning by an adversary.

statement in his affidavit that he had defenses to the complaint (and indeed, he filed an answer denying material allegations of the complaint) and his reluctance in his deposition to identify those defenses specifically.[6]  He also did not contradict his affidavit testimony that he would have timely responded to the Requests to Admit had he known of the consequences of a failure to do so when he testified in his deposition that he couldn't say exactly what his responses would have been because he hadn't gotten to that point, other than that he would have tried to get some assistance with the responses.

More troubling than Mr. Howe's insistence that these match-ups of affidavit testimony to deposition testimony demonstrate contradictions when they don't is his selective and misleading citation of Mr. Patterson's deposition testimony. Mr. Howe does not engage with Mr. Patterson's deposition testimony that:

- He believed when he was sued that the creditor, Indiana Tech, was not entitled to recover the full debt it had sued upon because it had made errors in processing his financial aid and in ensuring that financial aid covered the classes he was taking. Dkt. 136-1 at pp. 32, 65-66, 68, 72, 73, 112, 119, 136, 138-129, 150.

- He filed an answer to the complaint within the time the papers Mr. Howe served on him indicated he must do so, and that answer denied

---

[6]      Furthermore, as discussed below, Mr. Patterson did testify in his deposition about some defenses he wanted to assert.

the allegation that Indiana Tech was entitled to recover from him. *Id.* at pp. 60-61, 63-73.

- Had he known there was a time limit for responding to the Requests to Admit, he would have done so. *Id.* at pp. 94-95, 97-101, 107-110, 115-116, 149-150.

- He settled the lawsuit against him for the full amount demanded because the admissions left him with no leverage to negotiate. *Id.* at pp. 97-102, 107, 110, 115-170, 150.

It is simply incorrect for Mr. Howe to assert, as he does in the motion to strike, that in his deposition Mr. Patterson was unable to identify any defenses to the complaint and that he could not have disputed the material allegations of the complaint. The whole of Mr. Patterson's testimony demonstrates that conclusion, but it is also succinctly illustrated in this question and answer:

Q: So as we sit here at this moment, you're not aware of any defenses that you would have stated in defense of the collection action as of May 2016?

A: That wouldn't be accurate. I think what I'm trying to convey is that essentially I've gone through a series of situations where I have spoken on my own behalf and I seem to have waived or put aside my defenses because of my lack of knowledge on the law. And because [my affidavit] was filed on my behalf by my attorney, I would rather him speak to the legal ramifications of your question than me misspeaking.

Dkt. 136-1 at p. 139.

The court will not strike Mr. Patterson's affidavit.

### B. Mr. Howe's attempts to avoid Mr. Patterson's demonstration of Article III injury rests on an unsupported and untenable application of standing doctrine to the evidence presented.

In its order of March 23, 2021, the court discussed at length the line of Seventh Circuit decisions on the standing requirement in FDCPA cases, beginning with *Casillas v. Madison Ave. Associates*, 926 F.3d 329 (7th Cir. 2019). That discussion will not be repeated here. But the court has noted, for example, that standing cannot be established with a "bare procedural violation" that didn't put the plaintiff "in harm's way" or was merely "confusing" or "annoying" or "stressful." Our court of appeals has further explained that the plaintiff must have acted (or not acted, as the case may be) because of the violation or otherwise have suffered injury in a particularized and concrete way. *See, e.g., Brunett v. Convergent Outsourcing, Inc.,* 982 F.3d 1067 (7th Cir. 2020). *Ramirez* may require more than *Casillas*: the Court held that a risk of future harm (or, as the Seventh Circuit has put it, being placed "in harm's way"), if speculative, does not establish standing in a suit for money damages; that risk of harm must have materialized. 141 S. Ct. at 2210-12.

Against this backdrop, Mr. Patterson maintains that he has established his standing to obtain a remedy for the violation he has shown. In sum, he has testified, as discussed above, that he did dispute the debt to Indiana Tech, that he did not know that Requests to Admit, if not denied within 30 days, were deemed admitted, that had he known this, he would have made timely responses, and that he believed he lacked negotiating leverage as a result of the deemed admissions and agreed to pay the full amount claimed.

Mr. Howe argues that this is insufficient.  As a factual predicate for his argument, Mr. Howe asserts (1) that Mr. Patterson did indeed owe Indiana Tech and that his defenses were not valid (Dkt. 137 at pp. 2-4); (2) that he intended to pay but needed a payment plan (*id*. at pp. 4-6); (3) that when he was sued he did not contact an attorney but drafted and filed an answer on his own denying certain allegations and affirmatively raising other defenses (*id*. at pp. 7-10); (4) that he did not, at the time of his deposition, dispute other material elements of the claim (*id*.); and (5) that he did not serve discovery or otherwise defend the case (*id*. at p. 10). Mr. Howe goes on to point out that when Mr. Patterson later learned from counsel, around December of 2016, that the Requests to Admit were deemed admitted for lack of timely response, he did not attempt to "undo" or withdraw the admissions, presumably by filing a motion with the court under Ind.R.Tr.P. 36(B), or by asking Mr. Howe not to use the admissions against him.  *Id*. at pp. 10-12. Mr. Howe also asserts that he did not attempt to use the admissions against Mr. Patterson to collect the alleged debt (*id*. at pp. 11-12) and that Mr. Patterson ended up with a favorable monthly payment plan and his transcript as a result of the mediation of the case.  *Id*. at pp. 13-17.  Mr. Howe also notes, as if pertinent to standing, that Mr. Patterson has not sought actual damages in his FDCPA case but rather a statutory damages remedy.  *Id*. at p. 12.

And in his reply brief, Mr. Howe draws particular attention to Mr. Patterson's deposition testimony that he was harmed by Mr. Howe's service of the requests for admission because "it was necessary to 'join in the theater of my mind.'"

Dkt. 147 at p. 4 (quoting Dkt. 136-1 at pp. 105-06).  This, Mr. Howe asserts, is

insufficient because "an alleged harm that can only be perceived by entering the

theatre of the plaintiff's mind falls short of the concrete, particularized injury

required to establish Article III standing." Dkt. 147 at p. 4.  This is Mr. Patterson's

testimony from which the above-quoted portion was cherry-picked, which clearly

articulates his injury:

> [T]he only way I feel like I can describe it is while there might not have been
> a direct use, I would almost, like – just join in the theater of my mind here.
> Imagine if you're being robbed and someone has a weapon, but they don't use
> it. The presence of that weapon immediately disarms you and limits your
> options of response to particular action.
>
> And so while there may not have been a direct thing that I can point to to
> say, Well, because things were admitted, this was what happened, but I will
> say that because these were admitted, it's like my leverage was gone. Like I
> wasn't able to adequately defend myself and ultimately have to settle. I
> mean, it wasn't even like – the word "settlement," I would use that word
> loosely. I mean, it wasn't like there was any concessions that they made on
> their end, especially even financially.

Dkt. 136-1 at pp. 105-06.

The evidence on which Mr. Howe relies, even if fully credited, does not

diminish Mr. Patterson's testimony, which indisputably establishes that the

circumstances that led Mr. Patterson not to respond timely to the Requests to

Admit caused him to suffer an injury in a particularized and concrete way, that the

injury was likely caused by Mr. Howe, and that the injury would likely be redressed

by judicial relief.  *Ramirez*, 141 S. Ct. at 2203 (citing *Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992)); *Brunett v. Convergent Outsourcing, Inc.,* 982 F.3d 1067 (7th

Cir. 2020).  The harm Mr. Patterson alleged is particular to him; it is not an injury

suffered by consumers generally.  It is concrete; he testified without contradiction that he entered the mediation disadvantaged (whether Mr. Howe affirmatively wielded the admissions against him or not) by virtue of his knowledge that the allegations against him were legally deemed admitted.  And there is no dispute that Mr. Howe's violation of the FDCPA put Mr. Patterson in this position and that this court can redress his injury.  This is far from a "mere procedural violation" that won't support standing.

Mr. Howe's notion of standing would demand far more.  The essence of his argument is that Mr. Patterson lacks standing because he really was liable for the underlying debt, because he didn't try to ameliorate the negative consequences of his failure to make timely responses to the Requests to Admit, because all-in-all he got a pretty good result in the collection case, and because his request for statutory damages is somehow a concession that he hasn't been injured.[7]  The problems with these arguments are legion.  First, there is no decisional authority for them.[8]

---

[7]     He also maintains that the absence of an allegation of injury in the complaint defeats Mr. Patterson's standing.  Dkt. 137 at pp. 28-29.  As the court has already pointed out, the Seventh Circuit has rejected this argument.  *See Spuhler v. State Collection Service, Inc.*, 983 F. 282, 285 (7th Cir. 2020).

[8]     Mr. Howe cites a district court decision from Wisconsin, *Rossi v. Kohn Law Firm, S.C.*, 2020 WL 2527176 (W.D. Wis. May 18, 2020).  The *Rossi* court found that the plaintiff lacked standing to obtain a remedy under the FDCPA against a lawyer who signed a complaint without "meaningful involvement" in evaluating the claim.  Her assertion of standing, the court held, rested merely on her vague argument that the information of which she was allegedly deprived "had the potential to affect her actions."  In contrast, Mr. Patterson testified that Mr. Howe's violation of the FDCPA *did* affect his actions in a concrete, specific manner.  Further, the court in *Rossi* perceived virtually no causal effect from the lack of information about the extent of the lawyer's involvement on the defenses the debtor may have raised in

Second, they would require the court—just to decide the threshold question of its jurisdiction—to try the entire case (and perhaps the underlying debt collection case too).  Third, Mr. Howe conflates the requirement of an injury for standing purposes with damages under the FDCPA, and accepting Mr. Howe's position would be tantamount to erasing the statutory damages remedy Congress created in the FDCPA (and in other statutes as well).  Fourth, it would require Mr. Patterson to go to significant lengths to undo the harm done to him before he could claim an injury; in this case, it would charge him with an obligation to undertake an effort to have the admissions withdrawn under Rule 36(B), neither a sure thing nor one without sometimes costly conditions. *See General Motors Corp. v. Aetna Casualty & Surety*, 573 N.E.2d 885, 889 (Ind. 1991) (upholding trial court's denial of request to withdraw deemed admissions); Wright & Miller, *Federal Practice and Procedure* § 2264 (3d ed.) (citing *Upchurch v. USTNET, Inc.,* 160 F.R.D. 131 (D. Or. 1995).  *See also National Asset Consultants, LLC v. Midwest Holdings-Indianapolis, LLC*, Case No. 1:18-cv-01616-JRS/DML, Order on Motion to Deem Requests for Admission Admitted (S.D. Ind. July 8, 2019).

Having considered, reconsidered, and considered the issue yet again—after affording the defendant an opportunity to conduct discovery and to seek a hearing on any factual dispute he identified—the court determines that Mr. Patterson has standing to obtain a remedy for Mr. Howe's violation of the FDCPA.

---

the collection case.  The same cannot be said about the effect of deemed admissions; they defeat all defenses.

### III.    Further Proceedings

In its order of March 30, 2018, the court determined as a matter of law that Mr. Howe violated the FDCPA.  Dkt. 34.  In connection with summary judgment briefing, Mr. Patterson agreed that he had not shown actual damages and asked the court to award him the maximum statutory damage of $1000.  The court declined to do so at that time, and the relevant Seventh Circuit authority holds that the question of damages—even statutory damages—is a jury question.  *Kobs v. Arrow Service Bureau, Inc.*, 134 F.3d 893 (7th Cir. 1998) (citing *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830 (11th Cir. 1982)).

The damages issue is therefore set for **trial by jury on August 29, 2022, at 9:00 a.m. in Room 349, United States Courthouse, Indianapolis, Indiana.**

In light of the limited amount at issue for trial, the court strongly encourages the parties to consider and agree on an alternative to jury that could include, for example, a bench trial, a submission of the statutory damages issue to the court on the existing record, or a stipulated statutory damages amount (that preserves appellate rights on other issues).  Counsel shall confer, and by August 1, 2022, file a notice with the court to advise whether they have reached agreement on a procedure that would make a jury trial unnecessary.  Otherwise, the matter will be presented to a jury on August 29, 2022.

Once the statutory damages issue has been determined, the court will enter a final judgment and a schedule for Mr. Patterson's fee petition.

**IV.     Conclusion**

The defendant's motion to strike affidavit (Dkt. 138) is DENIED.  The standing of the plaintiff to obtain a judicial remedy in this case is confirmed.  The issue of statutory damages is set for trial by jury on August 29, 2022, at 9 a.m. in Room 349, United States Courthouse.  The parties must notify the court by August 1, 2022, whether and in what manner they agree to resolution of the damages issue without a jury.

SO ORDERED.

Date: 7/25/2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All counsel of record via CM/ECF

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-03364-DML-SEB |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## Final Judgment

The court, having entered summary judgment in favor of plaintiff Mark A.
Patterson on his claim under the Fair Debt Collection Practices Act and reaffirmed
that decision in subsequent orders (*see* Dkts. 34, 106, 149), having determined that
the plaintiff has standing (Dkt. 149), and having approved and entered the parties'
stipulation regarding the plaintiff's statutory damages, HEREBY ENTERS
JUDGMENT for plaintiff Mark A. Patterson and against defendant Howard Howe.
Mark A. Patterson is awarded statutory damages in the amount of $1,000.00, and
costs and reasonable attorneys' fees.  Any bill of costs and motion for attorney's fees
must be filed no later than 14 days after the entry of this judgment.

So ORDERED.

Dated: August 11, 2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-03364-DML-SEB |
| | ) | |
| HOWARD HOWE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>Order on Motion for Attorney Fees and Costs (Dkt. 156)</u>

On August 11, 2022, the court entered final judgment in favor of plaintiff Mark Patterson on his individual claims that defendant Howard Howe violated the Fair Debt Collection Practices Act, and it awarded statutory damages. Mr. Patterson has now filed a motion for award of his attorney fees and costs incurred in this action.  That motion is now fully briefed, and the court has carefully considered the parties' arguments in light of its own knowledge of this case and the manner in which it was litigated over the course of nearly six years.

The three major legal issues addressed by the parties and the court in this case were: (1) whether Mr. Howe had violated the FDCPA, (2) whether a class should be certified, and (3) whether Mr. Patterson had standing to recover for Mr. Howe's violation of the FDCPA.  Mr. Patterson was successful on issues 1 and 3 and ultimately unsuccessful on issue 2.  Because Mr. Patterson's individual action was successful, he is entitled to costs and reasonable attorneys' fees under the FDCPA. 15 U.S.C. § 1692k(a)(3) ("[I]n the case of any successful action . . ., [the debt

collector is liable for] the costs of the action, together with a reasonable attorney fee, as determined by the court.")

A reasonable attorneys' fee is generally determined by multiplying (a) a reasonable hourly rate by (b) the number of hours reasonably expended on the litigation. *E.g., Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). In deciding a reasonable fee, the court does not hold itself to "auditing perfection" but is entitled to do "rough justice" and to use estimates in calculating and allocating an attorneys' time. *See Fox v. Vice*, 563 U.S. 826, 838 (2011).

### A. Reasonable Hourly Rate

As explained in numerous Seventh Circuit decisions, a reasonable hourly rate is one "derived from the market rate for the services rendered" and "we presume that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *E.g., Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 (7th Cir. 2011); *Mathur v. Board of Trustees,* 317 F.3d 738, 743 (7th Cir. 2003) ("Only if an attorney is unable to provide evidence of her actual billing rates [regularly charged and paid by clients] should a district court look to other evidence" in deciding a reasonable hourly rate.)

Mr. Duff seeks reimbursement for all legal work at his current $445 hourly rate. He has submitted evidence to establish that that is his current rate charged to clients and that it is reasonable in light of his experience, expertise, and the results obtained in this case. Mr. Howe contends that Mr. Duff should not be compensated in excess of $350/hour for any work over the six-year course of this litigation

because $350 is the rate that Mr. Duff and Mr. Patterson agreed to in their fee agreement.  The defendant points out that this court limited Mr. Duff to a $350 hourly rate in an FDCPA case decided in 2019 based on this rationale and that the court should do the same here.  The court finds that its decision in *Lavallee v. Med-1 Solutions, LLC,* 2019 WL 13217905 (S.D. Ind. Dec. 12, 2019)*,* is not fully applicable in this case.  In *Lavallee*, this court limited Mr. Duff's hourly rate to $350 based on his fee agreement with Ms. Lavallee and stated that an adversary should not be required to pay more for Mr. Duff's legal services than the client had agreed to pay. The court stands by that holding.  But a closer look at Mr. Duff's fee agreement with Mr. Patterson reveals important distinctions not litigated in *Lavallee*:  *Lavallee* was an individual action.  This case was brought as a class action, and Mr. Duff's "Class Action Attorney Fee Representation Agreement" with Mr. Patterson is a hybrid contingent fee agreement that provides for payment of the *greater* of $350 per hour or 40% of the recovery.  Dkt. 164-1 ¶6.  Thus, $350 is not the ceiling on the amount Mr. Patterson agreed to pay Mr. Duff.  Moreover, the $350 hourly rate within Mr. Duff's fee agreement with Mr. Patterson was used to establish *ex ante* a *quantum meruit* rate in the event Mr. Duff was discharged.  For these reasons, the court rejects the superficial application of *Lavallee* that Mr. Howe urges here.

Mr. Duff has provided sufficient evidence that he has charged and been paid certain hourly rates over certain periods that this case has been litigated: $350/hour for work performed from 2012 through 2016, $395/hour for work

performed from 2017 through 2019, and $445/hour for work performed from 2020 to the present.  Dkt. 157-1 ¶¶21-23.  Mr. Duff requests that all his work, regardless of when it was done, be compensated at his current market rate as a reasonable approximation of the time value of money, and he relies on Seventh Circuit authority for this adjustment.  The court agrees that awarding fees using a current hourly rate is often appropriate to compensate the attorney for lost purchasing power that makes $1 paid today worth less than had it been paid a year ago, or six years ago.  But when the legal work for which compensation is due was performed over a very lengthy period, using current hourly rates "may produce a windfall." *See Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646, 663 (7th Cir. 1985) (court can compensate for delay in payment by computing interest or correcting for inflation by using current hourly rates, but "[w]hen a case lingers on for a long time . . . current hourly rates may produce a windfall for the plaintiff").

The court will therefore apply this general principle that an award should account for the time value of money but will adjust Mr. Duff's current rate to reflect the rationale behind that principle.  According to the government's Bureau of Labor Statistics, $350 in 2016, when adjusted using the Consumer Price Index, had the purchasing power of $438 in current dollars—a number very close to Mr. Duff's current rate.[1]  Of course, Mr. Duff did not perform all or even most of his legal services in 2016, so the court will make an adjustment to reflect that the services

---

[1]     https://www.bls.gov/data/inflation_calculator.htm

were performed over a long time span.  The court finds that an appropriate hourly rate under all these circumstances is $415.

## B. Reasonable Amount of Time Expended

A lawyer seeking to recover her fees is expected to use billing judgment and should seek compensation only for time that she reasonably would have billed to a paying client. *Hensley,* 461 U.S. at 434 ("Hours that are not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority.") (emphasis in original).

### 1. Compensation for Work on Class Certification Issues

Mr. Howe's most consequential objection to Mr. Patterson's fee petition implicates one of the principles that guides the reasonableness inquiry:  the award must account for limited success.  As noted above, the claims on behalf of a class were ultimately not successful.  Where a particular claim or theory is unsuccessful, the court may account for partial success either by eliminating specific hours attributable to the unsuccessful claims or theories or by making an across-the-board percentage deduction to the fees to account for limited success.  *See Bryant v. City of Chicago,* 200 F.3d 1092, 1101-02 (7th Cir. 2000).  The Seventh Circuit's decision this week in *Koch v. Jerry W. Bailey Trucking*, 2022 WL 10362574, *6-7 (7th Cir. Oct. 18, 2022), confirms this principle.

Mr. Patterson maintains that although the class claims in this case were ultimately unsuccessful, Mr. Duff's legal fees incurred in connection with class issues should be paid by Mr. Howe. He argues, with support from the affidavits of

two well-respected and accomplished attorneys, that the fact that the class obtained no relief was attributable to a change in the law and not to the parties, that nearly all the time spent on class issues was incurred when the law supported certification, and that much of it was incurred because of Mr. Howe's "unsuccessful resistance." Not compensating this time, he argues, would produce a windfall to Mr. Howe. He further notes that, upon the change in the applicable law, he responsibly agreed to decertification. The court mostly agrees with these observations, but Mr. Patterson has not offered any legal support for his position that these circumstances permit a departure from well-established law that limits fees to those incurred in prosecuting claims on which the plaintiff prevailed.

The court has therefore eliminated those fees incurred in pursuing Mr. Patterson's claims on behalf of a class. Those include certification issues as well as the net worth discovery (which was pertinent only to the class claims). The court has not made any reductions for Mr. Duff's work on Mr. Howe's motion to reconsider class certification because the issues presented with that motion were inextricably intertwined with the issues presented in Mr. Howe's motion to reconsider the court's summary judgment order (time that is compensable), a fact demonstrated by Mr. Duff's time entries. The court has reviewed Mr. Duff's time records, and of the 236.6 hours for which Mr. Patterson seeks fees, the court will subtract 96.5 hours incurred litigating class issues.

2. <u>Mr. Howe's Other Objections to the Reasonableness of Time Expended</u>

Mr. Howe makes an assortment of other objections to the time Mr. Duff billed in this case.

First, he argues that the award should not include Mr. Duff's time spent researching the law of standing. This contention is nothing short of preposterous. Standing was not only a critical issue litigated in this case, but the law evolved significantly during its pendency. The court relies on counsel to follow important developments in the law applicable to their cases, and Mr. Duff's billings related to this issue are reasonable—even modest—and the court will award compensation for this time.

Second, Mr. Howe asserts that Mr. Duff "should not be paid for a case he manufactured." Dkt. 164 at p. 4. This assertion is groundless and offensive and does not merit further discussion.

Third, Mr. Howe complains about redactions in the billing statements Mr. Duff has provided with his motion for fees, "block billing," and certain tasks Mr. Howe contends are non-billable. The redactions are minimal and context supplies enough information to gauge the reasonableness of the time spent. The court further finds the time entries detailed and thorough. An attorney's records must be detailed enough for the opposing party and the court to make informed judgments about whether the time billed accurately reflects work spent on the case and whether it was reasonably spent, but the market does not expect issue-by-issue detail in billing, and neither should the court. *See Fulmore v. Home Depot U.S.A.,*

7

*Inc.,* 2007 WL 1246226 at *3 (S.D. Ind. Apr. 27, 2007) (discussing block billing); *In re Synthroid Marketing Litig.,* 264 F.3d 712, 722 (7ᵗʰ Cir. 2001) ("amount of itemization and detail required is a question for the market.  If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more.")  Furthermore, billing statements are read in light of one's knowledge and recall of the docket, status, and progress of the case.  *Fulmore,* 2007 WL 1246226 at *3.  As for non-billable administrative tasks, the court will reduce the award by three-tenths of an hour for tasks performed on March 6 and 10, 2017, that were administrative in nature.  Aside from that and the work devoted to class issues, the court's careful review of Mr. Duff's time entries reveals no work that appears "excessive, redundant, or otherwise unnecessary" *Hensley,* 461 U.S. at 434, and thus not compensable.

Fourth, Mr. Howe argues that the award Mr. Patterson seeks is disproportionate to the statutory damages of $1000 he was awarded.  While gross disproportion can be the basis for reducing a fee award, the circumstances here do not warrant a reduction on this basis.  First, that sort of disproportion is inherent in many consumer protection cases, and slashing fee awards on this basis alone would undermine the important role of attorneys in enforcement of these statutes.  Second, the court has significantly reduced the award here to account for the lack of success in obtaining monetary relief for a class of plaintiffs.  Third, Mr. Howe chose to defend this case vigorously at every juncture, as he was entitled to do, but he cannot then complain about the fees Mr. Patterson had to incur.  Of particular note

in this regard is that after a liability decision in Mr. Patterson's favor and after decertification when the potential for liability to a class was no longer a risk, Mr. Howe continued to fight Mr. Patterson's individual recovery. Thousands in fees were incurred *after decertification* because of Mr. Howe's approach.

Finally, the court must not allow Mr. Howe's inappropriate comments in his opposition brief to escape rebuke. Not only does Mr. Howe assert that Mr. Duff "manufactured" this case—when the court has found that Mr. Howe's practices violated the FDCPA—but he accuses Mr. Duff of, among other things, attempting to "fleece[]" this court (Dkt, 164 at p. 10), "unnecessary (and failed) complication and delayed resolution of Plaintiff's claim" (*id*. at p. 6), and "pervasive inflated billing techniques." (*Id*. at p. 10). These remarks are disrespectful and unwarranted, and they are indicative of an approach to the defense of this case that, in the court's view, increased the amount of attorney time the plaintiff was required to expend.

### C. Summary of Award

The court makes an award of prevailing party attorney fees based on 139.8 hours (236.6-96.8) at $415 per hour for a total fee award of $58,017.00. It also awards $458.32 in costs. Costs incurred to Erwin CPA Group related to net worth discovery are not awarded.

## Conclusion

The court awards to plaintiff Mark Patterson and against defendant Howard Howe attorney fees in the amount of $58,017.00 and costs in the amount of $458.32. Judgment is entered separately.

So ORDERED.

Date: 10/21/2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK A. PATTERSON,                    )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )          No. 1:16-cv-03364-DML-SEB
                                      )
HOWARD HOWE,                          )
                                      )
                    Defendant.        )

## Judgment

The court, having entered its Order on Motion for Attorney Fee and Costs,

HEREBY ENTERS JUDGMENT for plaintiff Mark A. Patterson and against

defendant Howard Howe in the amount of **$58,475.32**, consisting of $58,017.00 for

attorney fees and $458.32 for costs.

So ORDERED.

Date: 10/21/2022

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

# CIRCUIT RULE 30(d) CERTIFICATION

I certify that all of the materials required by Circuit Rules 30(a) and 30(b) are respectively included in the Appendix bound with this brief and the Separate Appendix of Appellant Howard Howe.

s/Christopher C. Murray

## CERTIFICATE OF SERVICE

I certify that on this 13th day of January, 2023, I caused this APPELLANT'S CONSOLIDATED BRIEF to be filed electronically with the Clerk of the Court using the CM/ECF System, thereby serving:

Robert E. Duff    robert@robertdufflaw.com

s/Christopher C. Murray

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(g), I certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because this Brief contains 13,948 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

I further certify that this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared using Century Schoolbook 14-point font, a proportionately spaced typeface.

Dated this 13th day of January, 2023.

s/Christopher C. Murray